## TEXAS & PACIFIC COAL COMPANY v. THOMAS LAWSON.

### No. 346.—Decided March 26, 1896.

1. **Trust—Illegal Combination.**

   The Coal Company, which was operating the coal mining business upon its large tract of land and had a large number of employees residing thereon, made a contract with Lawson leasing him for five years premises on which to carry on the business of selling liquor: it agreed to lease to no other person for the same purpose nor permit any one else to carry on said business upon its land: also to issue time checks to its employees, which checks were to be redeemed weekly when taken up by Lawson: the company was to receive as rent two-thirds of the profits of the saloon business, monthly returns of which were to be made by Lawson. Held, that such contract was in violation of the statute against trusts and was void. (Pp. 400 to 402.)

2. **Conspiracy Against Trade—Law Against Trusts.**

   The statute (Ch. 117, Laws 21 Leg., p. 141) ignores the common law distinc-

tion between restrictions which are reasonable and those which are not, and between commodities which are of prime necessity and those which are not. (Pp. 400, 401.)

**3.  Combination—What Constitutes.**

The word combination, as used in the statute, means union or association. The contract provided not only for the union or association by the parties of their capital, but also for their united and associated action during the term in furtherance of a common object: and the purpose was to carry out restrictions in the trade and to prevent competition in the trade of retailing spirituous liquors.— Under the statute this contract was illegal and no action or counter-claim could be grounded thereon. (P. 401.)

**4.  Appeal—Illegality of Contract—Question Not Raised in Trial Court.**

The Supreme Court has jurisdiction to consider the question of the legality of the contract which was the basis of the plaintiff's claim and of the counter-claim of the defendant, although the point was not raised in the trial court nor by assignment of error. (Pp. 402, 403.)

**5.  Same—Practice—Objection to Evidence.**

Where the contract was unlawful neither of the parties could base thereon a cause of action or counter-claim. It follows that it was error for the trial court to allow, over plaintiff's objection, the pleadings or proof of any fact tending to support the counter-claim of defendant growing out of such contract; and it is immaterial that the invalidity of the contract was not urged in support of such objections; for in such case every special exception to pleading or evidence must necessarily involve the general objection to its legality or competency in any event. (P. 403.)

**6.  Illegality of Contract—Waiver.**

Parties litigant cannot by express waiver induce a court to pass over the illegality of a contract and administer their supposed rights thereunder based upon the assumption of its legality; and certainly a mere omission to notice such vice or bring it to the attention of the court can not have that effect. (P. 403.)

ERROR to Court of Civil Appeals for Second District, in an appeal from Hood County.

Action for rent by distress warrant for $4003.88. The distress was levied upon the stock in trade of the defendant. The plaintiff by amendment increased its claim to $13,500—chiefly for rents, but in part balance of an account.

The defendant filed counter claim for value of the goods seized and for the value of the lease and damages, actual and exemplary, for the wrongful suing out of the distress warrant.

The verdict of the jury was as follows: "We the jury find for the defendant Thomas Lawson as follows:

"Due on account by T. & P. Coal Co..............$  750.24
"Due on stock and other property levied on........ 3985.33
"Due on interest on stock....................... 478.23
"Due damages for value of the lease.............. 6852.60
                                                 ————————
    "Total................................$12,066.40
"As actual damages and as exemplary damages..... 6000.00
                                                 ————————
    "Total................................$18,066.40"

Judgment therefor was rendered for defendant, which judgment was,

on appeal, affirmed by the Court of Civil Appeals.   Other sufficient statement is given in opinion of the court.

*Hunter, Stewart & Dunklin*, for plaintiff in error.

*T. L. Nugent* and *John W. Wray*, for defendant in error.

DENMAN, ASSOCIATE JUSTICE.—The Texas & Pacific Coal Company being the owners of a large quantity of land, upon which it had a coal mining camp, called Thurber, in Erath County, Texas, containing about two thousand people engaged directly or indirectly in the development and operation of the company's mines, about four hundred of them being miners, and being also the owners of various buildings designed for store, drug store, livery stable and saloon for the purpose of supplying the wants of such a community, did on the 31st day of March, 1890, enter into an agreement with Thomas Lawson, whereby said company leased to Lawson its saloon, cold storage building and dwelling and yard of one acre connected therewith, for a term of five years with a privilege of renewal, and obligated itself to the effect, (1) that neither it, its successors nor its assigns would, during the continuance of such lease, sell or permit any other person or persons other than said Lawson, his agents or servants, to sell any wine, beer or spirituous liquors upon any lands owned or occupied by said company during the term of said lease, (2) that in case of sale of any such lands restrictions should be inserted in the deeds prohibiting sale of such liquors, (3) that said company, its successors and assigns should during said lease "issue checks to all persons in its employ to whom money may be due for wages or labor performed, and to redeem weekly all checks so issued which said Lawson may receive for wines, beer or spirituous liquors sold by him."

It is disclosed on the face of the instrument that it is "the purpose of this lease to confirm to said Lawson the exclusive privilege of selling wine, beer and spirituous liquors upon the land of the company during the term of this lease."

By the terms of this instrument Lawson obligated himself, (1) to conduct said saloon business in a prudent, buiness-like and economical manner, (2) to render to said company "monthly statements showing the full, complete and accurate status of said business," (3) to pay to said company, its successors and assigns, "for the rental of said premises and the exclusive right and privilege as aforesaid for the sale of beer, wine or spirituous liquors," a "sum equal to two-thirds of the net profits arising from said business monthly during the term of this lease," it being provided that payment of such rent should not be required during such periods as the operation of the mines might be suspended for as much as a month at a time.

The company sued on this contract for rent and by distress warrant seized the stock of liquors in said saloon, and thereafter entered and took possession of the leased premises and began business therein on its own account.

Lawson in his answer claimed, (1) that he was not, on a correct settlement of the accounts between him and the company under the contract, indebted to the company in any sum, but that it was justly due him a large sum for which he prayed judgment, (2) that his stock aforesaid was wrongfully seized and sold under said proceedings, and prayed judgment for its value, (3) that he had been wrongfully deprived of said lease and exclusive privilege, to his great damage, for which he prayed judgment, and (4) that said seizure of his stock and leased premises was wrongful and malicious, for which he prayed exemplary damages.

There were other issues presented by the pleadings on both sides, not necessary to mention here.

Verdict and judgment thereon was rendered against plaintiff, and for defendant, on each of the claims above stated, which being affirmed by the Court of Civil Appeals, the cause has been brought to this court by writ of error.

The following questions present themselves to us: (1) Was the contract aforesaid, when made, void as a matter of law, as being an undue restraint upon trade, or as tending and intended to create and foster a monopoly, or as being a trust within the statute? (2) If so, has this court the power, having acquired jurisdiction of the case by granting a writ of error upon an application not raising the question as to the legality of the contract, to declare the contract void therefor when its legality is first questioned by the court after submission of the cause, or in other words, is the court compelled to pass over the question as to the binding force of the contract and determine whether errors of law have been committed by the other courts in attempting to administer the supposed legal rights of parties based upon such an agreement, simply because neither party has seen fit by pleading or otherwise to assert an invalidity apparent on its face? (3) If the contract be held void, what effect will such holding have upon the various claims, counter-claims and defenses set up in the pleadings of the respective parties? (Beer v. Landman, 31 S. W. Rep., 805; Anheuser Busch Brewing Association v. Houck, 30 S. W. Rep., 869.)

As these questions were not discussed in the briefs upon which this cause was submitted, we deem it proper to set aside the submission and refer the cause back for oral and written arguments or either as counsel may desire upon the questions above stated.

Delivered November 25, 1895.

Additional brief of *Seth W. Stewart* and *W. T. League,* on request of Supreme Court.

In response to questions submitted by this honorable court to be briefed and argued, we beg leave to say:

Having filed this suit to recover rent of Lawson which had accrued under the terms of the contract, the validity of which is now called in question by this court, we are at a loss to know just exactly "where we are at" as attorneys.

It never occurred to us at the time we filed the suit, nor afterwards, that the contract was in violation of the act prohibiting contracts in restraint of trade. The suit was filed only about a year after that statute took effect, and before any adjudication of our courts, known to us, had been made, and hence our oversight of this most important question. We dislike very much to be compelled to take inconsistent and contradictory positions in this case, but from a careful reading of the statute of 1889, and the case of Brewing Company against Houck, 27 S. W. Rep., 692, and cases there cited, as well as those cited on motion for rehearing, and same case as decided by this court in 30 S. W. Rep., 870, we are driven to admit that the contract sued on by us is a contract entered into in restraint of trade in "beer, wines and spirituous liquors." It occurred to us at first that a person or corporation could do as he pleased on his own land, and put up one store or two stores, one saloon or two saloons; and that having this privilege inherent in his right to acquire and hold property, the law could not interfere with him; but while this may be true, it seems that the policy of Texas now is, as evinced by this statute, to prohibit persons, firms and corporations from binding themselves by contract in any manner so as to restrict the right at any time to change their course of conduct in reference to matters affecting restrictions of trade, if they should see proper to do so; and the contract sued on would clearly, if valid, prevent the Coal Company from putting up another saloon on the premises during the ten years, however great might appear the necessity, nor could it grant the privilege to others. This certainly, then, is a contract restricting the saloon business in the hands of one man on the 25,000 acres owned by the company for ten years, and prohibits any competition in that line on that land for that length of time, and probably is in violation of the statute. See Crawford & Murray v. Wicks, 18 Ohio St., 190; Sutherland on Statutory Construction, sec. 336, and cases cited; Craft v. Mconoughy, 79 Ill., 346; Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. St., 173; Arnot v. Pittson Coal Co., 68 N. Y., 558; Central Salt Co. v. Guthrie, 35 Ohio St., 666; India Bagging Association v. Kock, 14 La. Ann., 164.

In considering this question the public character of the 25,000 acres of land owned by the coal company must not be overlooked. As shown by the record, the company has established a town on said land with a postoffice and all kinds of stores and trading establishments usual and necessary to supply the demands of the public in that country; and which town, at the date of the contract under consideration, contained a population of 2000 people.

In the establishment of this town upon its lands the coal company has voluntarily conceded to the public certain rights and privileges which it cannot now restrict, restrain or abridge, by a contract entered into with a third person such as the one under consideration in this case. It is true, the company being the owner of all the lots in said town, thus established it, could at its pleasure maintain a single saloon, but at any time the public necessities demanded enlarged saloon facilities the com-

pany could have established a dozen or a hundred if there should be any necessity therefor. However, if the contract entered into with Lawson is valid, the company has put it entirely beyond its reach to establish any other saloon, or to permit any one else to do so, in said town, for and during the period of ten years, notwithstanding the population might have increased during that period to 25,000 people, and notwithstanding public necessity may have demanded a dozen saloons. On this line of argument the case of Crawford & Murray v. Wicks, 18 Ohio St., and other cases above cited are relied on. Crawford & Murray v. Wicks was a case in many respects similar to the one under consideration.

If the court comes to the same conclusion, then we understand it desires our views and authorities on whether it would have jurisdiction to declare the contract void, when the writ of error was granted on other grounds, and the invalidity of the contract was raised after argument and submission of the case, by the court itself. We unhesitatingly affirm that the court has such jurisdiction. It is certainly a fundamental error, if error at all, and this court has always, so far as we can find, exercised the jurisdiction and right to consider and decide fundamental errors, whether assigned or not. See Sayles Stats., art. 1033; Rules 23 and 24, Cts. Civ. App., 84 Texas, 700; Harris v. Petty, 66 Texas, 516; Hardin v. Abbey, 57 Texas, 582; Hardesty v. Fleming, 57 Texas, 395; Railway v. Scanlon, 44 Texas, 650; City of Austin v. Nalle, 85 Texas, 539; Rev. Stats., 1043. And we think this court ought not to deprive itself of so important a right and jurisdiction, for it is always exercised in the interest of putting an end to litigation, and has that effect and no other.

We also understand from the court's order referring the case back to us, that in case the court holds the rent contract void, our views are desired as to the effect such a holding would have upon the claims, counter-claims and defenses set up by the respective parties. Here again we believe that the statute referred to cuts a great figure; it certainly will, in our opinion, cut off the defendant from recovering any damages for breach of void contract, or for repossessing itself of the saloon premises, whether actual or exemplary, and will leave the defendant to claim the value of the goods actually taken and his claim for $1000 for services in obtaining miners for plaintiff. On the plaintiff's side it seems to us that we would be precluded from claiming rents accruing under and by virtue of the stipulations in the void contract; but we submit that we should be left the right to recover for use and occupation so much as the premises were reasonably worth, and that our suit for rent ought not to be dismissed unless the counter-claim for the value of the goods seized is dismissed also.

We think that the defendant's counter-claim for the market value of the goods seized is well plead against us, and that we ought to be permitted to amend our pleadings so as to sustain our distress warrant by an obligation setting up a claim for the reasonable value of the use and occupation of the premises. No limitation has been plead against us, and we apprehend could not be plead successfully, as the suit is for rents,

and while we may have mistaken the grounds upon which the rent accrued, yet it did accrue, and we sued for it, and this would stop the statute of limitation from running against our claim for rent of the premises for the period named.

The plaintiff would also be left with its rights to assert its actual ownership of the goods seized, or at least a two-thirds interest therein, in defense of defendant's claim for the value thereof, which, upon the present pleadings, or at all events under amended pleadings, would be legitimate matter of inquiry in the court below. * * *

*John W. Wray,* in reargument for defendant in error, concludes: The whole question before us then, on the facts and on the law is summed up in one proposition, viz.: Can an owner of private property, impressed with no quasi-public duties, grant an exclusive privilege to a man to conduct a legalized business thereon? The proposition must necessarily answer itself. To deny it is to deny that private ownership of property carries with it any exclusive rights. In the forcible language of Lord Denman this denial "carries its death wound apparent on it." Citing: Ins. Co. v. State, 86 Texas, 265; Natl. Benefit Co. v. Union Hospital Co., 11 Law. Rep. Ann., 437; Mollyneaux v. Wittenberg, 58 N. W. Rep., 205; Sharp v. Whitesides, 19 Fed. Rep., 157; Ladd v. Compress Co., 53 Texas, 172; Railway v. Robards, 60 Texas, 545; Morris v. Tuscaloosa Mfg. Co., 3 So. Rep., 689; Ice Co. v. Brewing Assn., 27 S. W. Rep., 211; Wiggins v. Railway, 73 Mo., 389; Richmond v. Railway, 26 Iowa, 191; In re Green, 52 Fed. Rep., 115; Laredo v. Bridge Co., 66 Fed. Rep., 246; Slaughter-house Cases, 16 Wall., 36.

DENMAN, ASSOCIATE JUSTICE.—In the former opinion setting aside the submission and referring this cause back for argument, sufficient has been stated to indicate the nature of the contract and the issues presented in the pleadings based thereon.

The first question we will consider is whether the contract created a trust within the meaning of Ch. 117, p. 141, of the Acts of 1889, which provides "That a trust is a combination of capital, skill, or acts by two or more persons, firms, corporations, or associations of persons, or of either two or more of them for either, any, or all of the following purposes: First, to create or carry out restrictions in trade * * *. Third, to prevent competition in * * * sale or purchase * * * of * * * commodities;" and declares, "That any contract or agreement in violation of the provisions of this act shall be absolutely void, and not enforceable in law or equity." The portion of the act above quoted denounces as void and prohibits the enforcement at law or equity of every contract whereby a combination of capital, skill, or acts is formed "to create or carry out restrictions in trade," or "to prevent competition in the sale or purchase of commodities." The statute ignores the common law distinction between restrictions which are reasonable and those which are not, and commodities which are of prime necessity and those

which are not. (Houck & Dieter v. Brewing Assn., 88 Texas, 185; Brewing Assn. v. Houck, 27 S. W. Rep., 692.) It relieves the courts of the difficulty of determining whether in a particular case any effect will be given such a contract, by declaring that it "shall be absolutely void, and not enforceable either in law or equity." (Beer v. Landman, 88 Texas, 450.) The word "combination," as used in the statute, means union or association. It is clear that the contract provided for and contemplated a union or association of capital and acts by the Coal Company and Lawson. The former furnished the place of business, agreed that during the term of the lease it would not permit any other saloon to do business at Thurber, that it would pay off its employes in checks instead of money and would redeem weekly such of said checks as Lawson might take in for liquors sold, and the latter agreed to conduct the business, to furnish monthly statements thereof and pay the former two-thirds of the profits in return for the use of the premises and the exclusive privileges guaranteed by the contract. Thus the contract provided, not only for the union or association by the parties of their capital, but also for their united and associated action, during the entire term, in furtherance of the common object, and was therefore a "combination of capital" and "acts."

In order, however, for the contract to be within the inhibition of the statute, the combination must have been formed for one of the purposes therein specified. Was its purpose either "to create or carry out restrictions in trade" or "to prevent competition in sale or purchase of commodities?" This court has held that as here used, the word "trade" means traffic, which is defined to be "the passing of goods and commodities from one person to another for an equivalent in goods or money," and the word "commodities" means "any movable or tangible thing that is ordinarily produced or used as subject of barter or sale." (Ins. Co. v. State, 86 Texas, 250.) It is clear then that the dealing in liquors contemplated by the contract is a "trading," and their purchase and sale is of "commodities" within the statute. (88 Texas, 185, 27 S. W. Rep., 692, supra.) It is apparent from the face of the contract, that the purpose of the parties in entering into the combination evidenced thereby was, as far as they might be able, (1) to restrain any other person from entering into the business of selling liquors to the people of Thurber during the lease, (2) to prevent the employes of the company from purchasing liquors from any one other than Lawson, and (3) to influence such employes to squander their earnings in the saloon, erected and maintained under the terms of the contract principally for the benefit of the employer. This is all apparent from the agreement not to permit any one else to sell liquors on the company's lands, added to the very extraordinary agreement that the company should, during the term of the lease, which might have been ten years, issue checks to its laborers, instead of paying money, and redeem weekly such of those checks as Lawson might take in for liquors sold at such saloon. This guaranteed to Lawson the cash at the end of each week on such checks as he might take in for liquors sold, and put it in the power of the company, by refusing or delaying the pay-

ment of other checks, to prevent Lawson and others from readily receiving same from the employes and thus force their negotiation for liquors at said saloon. Thus the scheme evidenced by the contract was not only to prevent any other person from coming into competition with Lawson, but also to invade the right of the miners to spend their wages with whomsoever and for whatsoever they might choose, and to practically place it in the power of the company to direct its expenditure for liquors at a saloon conducted for its own benefit.

We are of opinion that the purpose of the combination was to create and carry out a restriction in the sale of liquors at Thurber, and also to prevent competition in the sale and purchase thereof.

It results from what has been said that the contract created a trust within the meaning of the statute, and is therefore void, and no action or counterclaim can be founded thereon.

While we place our decision upon the statute we apprehend it would be difficult to sustain the contract at common law. (Crawford & Murray v. Wick, 18 Ohio St., 190; Salt Co. v. Guthrie, 35 Ohio St., 666; Craft v. M'Conoughy, 79 Ill., 346; Arnot v. Pittston & Elmira Coal Co., 68 N. Y., 558; Morris Run Coal Co. v. Barkley Coal Co., 68 Penn. St., 173.)

Counsel for Lawson in an able argument contends that this court has no jurisdiction to consider the illegality of the contract, since that question, as indicated in our former opinion, was not raised in the court below and not assigned as error here. The contention is based upon the ground that the statute limits the jurisdiction of this court to the consideration of the specific assignments of error upon which the writ was granted, and precludes its consideration of even a fundamental error not included in such assignments. While we are not inclined to agree with such construction of the statute, we deem it unnecessary to decide the question in this case.

The pleadings of plaintiff and defendant below cover nearly one hundred of the six hundred and fifty type-written pages of the record before us, and therefore we will not undertake to even outline the numerous issues and the evidence adduced in support thereof; but will content ourselves with the brief statement heretofore made, and the additional statement that the various claims and counterclaims of the plaintiff and defendant, as set up in the pleadings, are based upon the supposed rights of the parties growing out of and dependent upon the validity of the contract above referred to and the one preceding it which was tainted with the same vice.

There are fourteen assignments of error in this court complaining of the action of the Court of Civil Appeals in refusing to sustain assignments made in that court calling in question the correctness of the ruling of the trial court upon various questions arising during the progress of the trial had for the purpose of determining the rights of the parties growing out of said unlawful and void contracts. Some of such assignments question defendant's right to plead, and others to prove, various acts of plaintiff's officers tending to show a settled purpose on the part of the plaintiff to

ruin defendant's business and thereby destroy the value of his lease and force him to abandon same, all of which so reduced the receipts that the saloon was run at a loss and no rents were due, and that thereupon plaintiff attached the goods and seized the leased premises. This evidence bore upon the state of the account between the parties under the lease, the value of the lease of which defendant had been deprived, and the issue of punitory damages for its seizure, upon each of which issues the jury rendered a verdict for defendant for a large sum, based upon a violation of some supposed right growing out of the contract. Since we are of opinion that the contract itself was void, and that neither of the parties could base thereon a cause of action or counter-claim, it follows that it was error for the trial court to allow, over plaintiff's objection, the pleading or proof of any fact or facts tending to support defendant's said counter-claims based thereon.

It is wholly immaterial that the invalidity of the contract was not urged in support of such objections, for in such a case every special exception to pleading or evidence must necessarily involve the general objection to its legality or competency in any event. If the foundation of the action fails all pleadings and evidence tending to support the verdict are thereby necessarily shown to have been improperly sustained and admitted, and it would be folly for a court to thereafter undertake to determine, as we are now asked to do, whether such pleading and evidence were properly sustained and admitted upon the assumption of the legality of the cause of action. Parties litigant cannot by express waiver induce a court to pass over the illegality of a contract and administer their supposed rights thereunder based upon the assumption of its legality and certainly a mere omission to notice such vice or bring it to the attention of the court cannot have that effect.

There are other assignments, based upon the action of the court in excluding evidence, refusing to charge the jury, and refusing to set aside the verdict, which also necessarily involve the consideration of the question as to the validity of the contract under the principles above stated, and for the same reasons we think the action of the court with reference thereto erroneous, but no useful purpose would be subserved by going over them in detail, as the case must be disposed of here for the errors above noticed.

For the errors above indicated, the judgments of the Court of Civil Appeals and the trial court will be reversed and the cause remanded. It may be that upon a repleading some of the claims or counter-claims can be so far separated from the illegal contract as to permit a recovery, and for that reason we will not dismiss the entire proceeding as would otherwise be proper. On referring the cause back we requested argument and expected citation of authorities in order to enable us to determine, in view of another trial, which of the claims or counter-claims would be so far affected, in case we concluded that the contract was illegal and void, as to preclude recovery thereon, but as we have not been given the benefit of authorities thereon we do not feel called upon to go

into an examination of questions which would consume much time and probably be of no service in determining the issues that may be finally presented for adjudication herein.

*Reversed and remanded.*