BISHOP v. JAPHET. (No. 346.)

(Court of Civil Appeals of Texas. El Paso. Oct. 15, 1914. On Rehearing, Dec. 17, 1914.)

1. CONTRACTS (§ 139*) — ILLEGALITY — ENFORCEMENT.

Plaintiff, desiring to eliminate H. from a retail liquor business they owned together, procured defendant to ostensibly purchase the entire business from H., defendant agreeing to hold the same in trust as plaintiff's agent, and employé, and to conduct the business for plaintiff's use and benefit. Plaintiff furnished the funds, agreeing to pay defendant a salary of $150 a month as manager. Title was taken in defendant's name, and he was the ostensible owner of the business and the license, but, having repudiated the contract and claimed the business as his own, and that the advancement made to purchase the same was a loan, plaintiff sued to recover title, and sued out a writ of sequestration which was levied on the property, after which it was replevied by defendant, who filed a cross-action, claiming title. *Held,* that the contract alleged by plaintiff constituted an illegal attempt on his part to engage in the retail liquor business in the name of another, and since he could not recover without relying on the illegal transaction, the court properly refused to render judgment for him, but erred in failing to sustain defendant's title, which could be done without reference to the illegal contract, and also in failing to render judgment in defendant's favor against plaintiff and the sureties on the sequestration bond, since to deny such relief would permit plaintiff to use an extraordinary remedy to indirectly enforce his illegal contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 684–700; Dec. Dig. § 139.*]

2. CONTRACTS (§ 138*)—ILLEGAL CONTRACT—ENFORCEMENT—PLEADING.

The court will not enforce an illegal contract where the illegality appears in the proof, though not pleaded.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 681–700; Dec. Dig. § 138.*]

3. CONTRACTS (§ 138*)—ILLEGAL CONTRACT—MALUM IN SE—MALUM PROHIBITUM.

The court will not enforce an illegal contract, whether the illegality is malum in se or merely malum prohibitum.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 681–700; Dec. Dig. § 138.*]

On Rehearing.

4. SEQUESTRATION (§ 20*)—ACTION ON BOND—VERDICT—VALUE OF PROPERTY.

A verdict and judgment against persons who have replevied sequestered property must find the value of the several items of property replevied as of the date of the trial, since the obligors on the sequestration bond are authorized by Rev. St. 1911, art. 7107, to return the entire property, or any portion thereof, in satisfaction of the judgment in whole or in part.

[Ed. Note.—For other cases, see Sequestration, Cent. Dig. § 24; Dec. Dig. § 20.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Suit by Dan A. Japhet against Fred M. Bishop. From a judgment dismissing both plaintiff's original suit and defendant's cross-action, plaintiff appeals. Affirmed in part and reversed in part.

J. V. Meek and Jas. Slyfield, both of Houston, for appellant. Baker, Botts, Parker & Garwood, of Houston, for appellee.

HIGGINS, J. Japhet filed suit against Bishop, alleging that on September 20, 1911, he purchased and became the owner of a retail liquor business in the city of Houston known as the Houston Liquor Company, and became the owner of a lease upon the building in which the business was located, and Bishop was to manage and control the business at a monthly salary of $150; that on April 15, 1912, Bishop repudiated his contract of employment and appropriated to his own use and benefit the stock of goods and fixtures. Judgment was prayed for the title and possession of the property and premises. A writ of sequestration was issued at plaintiff's instance and levied upon the property in controversy, and the same was thereafter replevied by Japhet. By amended petition, upon which the cause was tried, it was alleged that on September 20, 1911, Japhet became the owner of a retail liquor business in city of Houston, known as the Houston Liquor Company, and employed Bishop to manage and control the same; that on April 1, 1912, Bishop unlawfully took possession thereof and converted the same to his own use and benefit; that same was of the value of $5,921.76. Judgment was prayed for the title and possession to said property and for damages in the sum of $5,000.

There is no substantial difference between the original and trial petition, except the latter omits the allegations with reference to the employment of Bishop by plaintiff to manage and control the business; the latter being in the ordinary form of an action to recover the title and possession of chattels wrongfully withheld from the rightful owner, and for damages. Bishop answered by general denial and cross-action, alleging that he was the owner of said business and stock of goods, having bought the same with funds loaned him for that purpose by Japhet; that the property had been seized under writ of sequestration, the issuance of which had been unlawfully and maliciously procured by Japhet, and he prayed judgment over against Japhet for his damages, actual and exemplary, occasioned thereby.

The testimony of Japhet discloses that on September 20, 1911, he and J. N. Hirsch owned a retail liquor business known as the Houston Liquor Company, title thereto being in the name of Hirsch, but Japhet owning a half interest therein. Hirsch was manager of the business, and Japhet was a

secret partner. Being desirous of eliminating Hirsch and acquiring his half interest, Japhet had Bishop to ostensibly purchase the entire business, Hirsch selling and conveying same to Bishop, who was to hold same in trust as agent and employé of Japhet and to conduct the business for his use and benefit. Japhet furnished the funds and was to pay Bishop a salary of $150 per month as manager. Title to the business and the stock and fixtures was taken and stood in Bishop's name, and he was the ostensible owner of the business; the liquor dealer's license, bond, etc., all being in Bishop's name. Upon the whole, it is an admitted fact from Japhet's standpoint that the whole transaction was colorable, and designed to enable him to engage in the retail liquor business in the name of another, in violation of law.

The testimony of Bishop was to the effect that the funds furnished by Japhet were loaned him to enable him to buy the business, and that he was the bona fide owner of the business and stock of goods. The case was submitted to a jury upon special issues, the first being:

"Were the goods bought for the benefit of Japhet and were the same to be his property, or did he loan the money to Bishop with the understanding that the goods were to be the property of Bishop, and the business was to be owned by Bishop?"

—to which the jury answered:

"We, the jury, find the goods were bought with the understanding that they would be Japhet's property."

The jury further found that:

"When Japhet gave Bishop the money to buy the business and goods of the Houston Liquor Company, the agreement contract between Japhet and Bishop was that Bishop should take charge of the business and take out the license in his own name and run the business, and buy and sell liquors in his own name for the use and benefit of Dan A. Japhet."

The judgment of the trial court recites that the jury's findings establish an illegal contract and agreement between the parties, and that the court would grant no affirmative relief to either. It was therefore decreed that Japhet take nothing by his suit against Bishop, and that Bishop take nothing by his cross-action, and the sequestration bond be canceled and held for naught.

[1] The legal principles governing a proper disposition of this case are stated in Beers v. Landman, 88 Tex. 450, 31 S. W. 805. Landman gave Beers a promissory note in settlement of a balance due upon a gambling transaction arising out of speculation in cotton futures and as collateral security also indorsed and delivered certain negotiable notes. In a suit to enjoin Beers from collecting the principal or collateral notes and for decree canceling the principal note and ordering surrender of the collateral notes, it was said by Judge Denman:

"In order to properly understand the point to be determined, it will be well to state that it does not involve the question as to whether, or under what circumstances, equity will lend its aid to cancel an executory contract founded upon an illegal consideration, as in case of the principal note above referred to; but it involves the sole question as to whether equity will interfere or lend its aid to cancel an executed contract, on the ground that the consideration thereof was illegal. For there can be no doubt that the indorsement and delivery of the negotiable notes to appellants, as security, vested in them the legal title thereto, and a qualified interest therein. Thus Landman, a party to the unlawful transaction, equally guilty with H. and B. Beers, having vested in the latter the legal title and qualified interest in said collateral notes, seeks to have the court of equity divest such title and interest out of the latter and reinvest him therewith, on the ground of the unlawfulness of the transaction. He does not seek the aid of a court of equity in making a defense to an executory contract, but seeks its aid in attempting to disturb property rights conferred by him upon his accomplice. Where two persons guilty of participation in an unlawful transaction are in pari delicto, as in this case, neither a court of law nor a court of equity will aid either to recover or reinvest himself with any title * * * vested in the other, but will leave them in the same condition as to vested interests as they, by their own acts, have placed themselves. * * *

"In Frost v. Plumb (1873) 40 Conn. 112 [16 Am. Rep. 18] discussing the principle under consideration, and following in the line of the English and Massachusetts cases above cited, the court say: 'We understand the rule to be this: The plaintiff cannot recover when it is necessary for him to prove, as a part of his cause of action, his own illegal contract, or other illegal transaction; but if he can show a complete cause of action without being obliged to prove his own illegal act, although such illegal act may incidentally appear, and may be important even as explanatory of other facts in the case, he may recover. It is sufficient if his cause of action is not essentially founded upon something which is illegal. If it is, whatever may be the form of the action, he cannot recover.'

"If appellee were to sue in a court of law for the possession of the notes, and appellants were to answer that the legal title and special interest therein had been vested in them by the indorsement to secure an indebtedness, such answer would be a complete defense to appellee's suit, without setting up any facts implicating appellants in the unlawful transaction. Therefore, appellants' defense would not be based upon the illegality. In order to avoid such defense, appellee would be compelled to urge and rely upon his own participation in the unlawful transaction, thus bringing himself directly within the rule laid down in the case of Taylor v. Chester, and other authorities above cited, which prohibit his recovery."

The legal title to the property in controversy here was vested in Bishop. Japhet sued in a court of law for title thereto and possession. In order to avoid the consequences arising from Bishop's legal title, Japhet undertakes to show that he is the equitable owner thereof, and in order to do so, he is obliged to prove his participation in a transaction prohibited by the civil and penal laws of our state. Bishop can sustain his title without in any manner relying upon the illegal transaction, as he acquired same by virtue of the conveyance from Hirsch, but with Japhet it is quite different, and he can in no wise connect himself with the title

without disclosing and relying upon his own participation in the unlawful transaction. It being impossible for him to recover, except through the medium and by the aid of an illegal transaction to which he was himself a party, the maxim, "When both parties are equally in fault, the condition of the defendant and possessor is better," clearly applies, and is decisive of the case.

The court properly refused to enter judgment in Japhet's favor. Beers v. Landman, supra; Eckles v. Nowlin, 158 S. W. 794; Read v. Smith, 60 Tex. 379; Crutchfield v. Rambo, 38 Tex. Civ. App. 579, 86 S. W. 950; Ry. Co. v. Lawson, 89 Tex. 394, 32 S. W. 871, 34 S. W. 919; Wiggins v. Bisso, 92 Tex. 219, 47 S. W. 637, 71 Am. St. Rep. 837; Fugua v. Pabst, 90 Tex. 298, 38 S. W. 29, 35 L. R. A. 241; Seeligson v. Lewis, 65 Tex. 215, 57 Am. Rep. 593.

[2] The authorities cited by appellee are distinguishable. It is urged by appellee that it was necessary for Bishop to plead the illegality of the transaction. The unlawful nature of the transaction is the basis of the plaintiff's right, and goes to the foundation of the action. The function of the court is to enforce the law and not permit that which is forbidden; it will not disregard this rule, though not pleaded. Ry. Co. v. Lawson, 89 Tex. 394, 32 S. W. 871, 34 S. W. 919; Pasteur Vaccine Co. v. Burkey, 22 Tex. Civ. App. 232, 54 S. W. 804; Willis v. Weatherford, 66 S. W. 473; Simpkins on Contracts & Sales (3d Ed.) 384, 385.

[3] And it is of no consequence whether the matter was malum in se or merely malum prohibition. Labbe v. Corbett, 69 Tex. 505, 6 S. W. 808.

The court erred in failing and refusing to enter judgment in Bishop's favor against Japhet and the sureties upon his bond for the value of the property sequestered and delivered to Japhet under a replevin bond. Article 7111, R. S. 1911. Blum v. Gaines, 57 Tex. 135; Rea v. Schow, 42 Tex. Civ. App. 600, 93 S. W. 706. A failure so to do permits Japhet to use an extraordinary remedy of the court to accomplish his purpose and thus indirectly do what the court will not directly do, i. e., restore to him the title and possession of the property. The original status quo of the parties to this unlawful transaction should not have been in any way disturbed by the court, and since it appears that its process has been wrongfully used for such purpose, the court, so far as it is possible to do, will restore the original status quo and leave the participants in this illegal transaction in the very position in which they voluntarily placed themselves and in which they were at the inception of the litigation. This does not constitute affirmative relief to the defendant, but simply enforces the policy of the courts to leave as it finds them participants in unlawful trans-

actions. To do otherwise would practically destroy the wholesome effect of this doctrine and open wide the door to an easy method of avoiding its consequences.

The cause is therefore reversed and remanded, and upon retrial, if the evidence be the same as here presented, the trial court is instructed to enter judgment refusing Japhet the relief for which he prays; that he be directed and ordered to restore to Bishop's possession the sequestered and replevined chattels, and that Bishop have judgment upon the replevin bond, in accordance with the provisions of articles 7107, 7108, 7109, 7111, Revised Statutes, for the value of such of the chattels as Japhet should fail or refuse to return; that all other relief be refused Bishop.

Reversed and remanded, with instructions.

### On Rehearing.

In this cause, the motions for rehearing filed by appellant and appellee are both overruled.

[4] Appellant insists that there is no necessity to reverse and remand this cause, but that judgment should be here rendered in conformity with the views expressed in the original opinion. In reply to this suggestion, it is sufficient to say that a verdict and judgment against persons who have replevied sequestered property must find the value of the several items of property replevied, as the obligors have the right, under article 7107, R. S., to return the entire property or any portion thereof in satisfaction of the judgment in whole or in part, and the value of the several items of property must be found as of the date of the trial. The verdict in this case is defective in that respect. The cause was submitted upon special issues, and there is no finding by the trial court of the value of the various items of replevied property, as is authorized by article 1985, as to issues not submitted and not requested to be submitted, and the evidence in the record is not of that character as would authorize this court to undertake to find such valuation. It is therefore necessary that the cause be reversed and remanded, with instructions as contained in the original opinion filed herein.

The opinion upon rehearing heretofore filed on November 12, 1914, is ordered withdrawn, and this opinion is filed in lieu thereof.