### GABERT v. EASTUS.

#### No. 12853.

Court of Civil Appeals of Texas. Fort Worth.

June 17, 1933.

Rehearing Denied July 15, 1933.

Hampden Spiller, of Fort Worth, for appellant.

Greines & Greines, of Fort Worth, for appellee.

LATTIMORE, Justice.

Appellee sued appellant for damages, alleging that appellant had converted an automobile belonging to appellee.

Appellant answered by a general denial only.

Appellee's testimony showed a bill of sale, regular on its face, transferring the title in the car to appellee, the car being then in the possession of appellant and never in appellee; the demand by appellee upon appellant for possession and the refusal thereof; and the damages.

Appellant proved without objection thereto that the car (a Ford) had been taken by the police from one Burkhead and stored with appellant under the belief that it was a stolen car; that all the identification numbers had been taken off prior to seizure by police; that even the secret number, to obtain access to which it is necessary to remove the body, was filed off; that police were unable to find any owner other than Burkhead; that prior to such arrest one Williamson had applied to the tax collector of Tarrant county for a license receipt and tags, but was unable to furnish evidence of ownership and was refused; that some one had thereafter purchased a Ford truck secondhand motor from a wrecking yard and obtained a bill of sale therefor; that the numbers of said truck motor were thereupon stamped onto the motor in this Ford; that Williamson again applied to said tax collector for license, presenting an affidavit that the car was "rebuilt" from various assembled parts, among them this truck motor, which, if true, entitled him to his license and highway tags; that the tax collector issued same and that Williamson assigned to Burkhead; that after said arrest Burkhead assigned to appellee; that Burkhead confessed to the police Williamson's connection with other car thefts.

■ We believe it probable that the car was a stolen one. At least, there is ample evidence to make a jury issue of that fact.

Articles 1431 and 1433 of the Penal Code of Texas read as follows:

"Art. 1431. No person in this State shall have or retain in his possession, or sell or offer to sell any motor vehicle from which the engine number has been removed or oblit-

erated. Every such owner of a motor vehicle from which the engine number has been removed, erased, or destroyed in any manner, before using the same upon the public highways of this State, or selling or offering for sale any such motor vehicle, shall make application to the Highway Commission for an engine number, and the number assigned by the Highway Commission shall be stamped with a steel die on the engine of such motor vehicle. Anyone violating any provision of this article shall be fined not less than ten nor more than one hundred dollars."

"Art. 1433. Whoever makes an application to the county tax collector for the registration of any motor vehicle from which the original engine number has been removed, erased, or destroyed in any manner until it bears the new engine number designated by the State Highway Department under the provisions of this law shall be fined not less than fifty nor more than one hundred dollars; and it shall be the duty of any person who has applied to and received from the State Highway Department a new engine number as herein provided, to present the receipt received for the registration of such new engine number from the Department to the County Tax Collector when applying for the registration of such motor vehicle under the provisions of the law and failure to so present such receipt to the county tax collector shall subject the owner of said motor vehicle to a fine of not less than ten nor more than fifty dollars. Any tax collector who shall knowingly accept an application for the registration of a motor vehicle from which the original engine number has been removed, erased or destroyed in any manner, and which does not have on it the number designated by the Highway Department, shall be fined not less than ten nor more than fifty dollars."

These articles are a part of chapter 138, Acts of the 36th Legislature (1919). That act was designed in part to aid in preventing automobile theft, as shown by the caption. Not that the statute would handcuff the would-be thief and make it physically impossible to commit the taking, but that the "fence" who would receive the stolen goods, mutilated to prevent detection, would find himself by that mutilation punishable by law, and that the prospective buyer of such car would be warned by the criminal offense involved in such sale that he must not aid in making such theft profitable. Stolen automobiles are usually sold at less than the market value of a like commodity lawfully purchased. The sale receipts are all profit to the thief. Thieving is sometimes clever, and the professional thief (and we note that Burkhead had knowledge of some other thefts in which Williamson was involved), to cover his theft, arms himself with false license numbers and bills of sale. He "didn't know

it was stolen," he "bought it from a dark man who gave him this bill of sale," are glib defenses, familiar to peace officers' ears.

To thwart the cupidity of the buyer of these bargains and destroy this pictured respectability is to make thieving more dangerous and less profitable. To hold that these statutes confer valid civil title under such a sale is to destroy the first objective.

We are aware of the distinction sought to be made in Hennessy v. Auto. Owners Ass'n (Tex. Com. App.) 282 S. W. 791, 46 A. L. R. 521, between a sale and the failure to deliver bills of sale and collectors' receipt for the license tax, which failure is a misdemeanor, that the sale passes title and is not invalid because of the violation of the law in not delivering such bills of sale or tax receipt, but it is not necessary for us to consider such line of reasoning for the reason that same is not applicable here. The very sale of the automobile with its mutilated number is itself a violation of the law and appellee seeks to avail himself of the illegal act of Burkhead to which he was knowingly a party.

The Code of Criminal Procedure, title 12, chapter 2 (article 933 et seq.), sets out fully the procedure to be followed when "an officer who comes into custody of property alleged to have been stolen" (article 933). When the article is an automobile, articles 1431, 1432, 1433, P. C., must also be observed. It follows that the sale under the civil statutes by appellant for charges was also illegal, but this does not change the fact that appellee, not having the possession necessary to constitute prima facie ownership, must prove his title. He cannot in such case recover on the absence of title of appellant.

Appellee made out a prima facie case which did not disclose the illegality of the contract and rested. The defendant then under general denial offered the evidence above recited. There is considerable confusion in our authorities as to whether defendant's pleading was sufficient. In Texas & P. Coal Co. v. Lawson, 89 Tex. 394, 32 S. W. 871, 34 S. W. 919, 921, the illegality of the contract was first raised by the Supreme Court itself without pleading or assignment of error by counsel. "Parties litigant cannot, by express waiver, induce a court to pass over the illegality of a contract." However, in that case the illegality was apparent on the face of the contract sued on. Judge Gaines was Chief Justice at that time. In Heffron v. Pollard, 73 Tex. 96, 11 S. W. 165, 168, 15 Am. St. Rep. 764, Judge Gaines, in a case in which the illegality did not appear in the plaintiff's prima facie case, said: "In order for defend-

ant to have availed himself of the illegality of the contract as a defense, he should have pleaded it." The pleading of illegality of these automobile sales has been several times before our courts. Some say pleading is not necessary, Balaguer v. Macey (Tex. Civ. App.) 238 S. W. 322, in which case it was dictum, since the court held the matter pleaded, and the opinion does not show whether it appeared in plaintiff's evidence. In Bishop v. Japhet (Tex. Civ. App.) 171 S. W. 499, the plaintiff's own testimony established the illegality of the transaction under which he claimed, i. e., that he was the owner of a liquor house without a license therefor. This holding is also made in Tri-State Motor Co. v. King (Tex. Civ. App.) 277 S. W. 433, in which numerous cases are cited. All these cases rely on Texas & P. Coal Co. v. Lawson, supra, in which the invalidity appeared by the showing of him who declared upon the invalid contract. In Mullins v. Nash-El Paso Motor Co. (Tex. Civ. App.) 250 S. W. 472, 473, it is said that when the illegality does not appear from plaintiff's contract or the evidence to prove it, then the defense should be pleaded, but said that if the evidence is admitted without objection it is none the less available in the absence of pleading. The record was silent as to whether the tax receipt was or was not delivered and the sale was sustained. Sanders v. Chaddick (Tex. Com. App.) 267 S. W. 248, 249, said that the appellant seeking to recover damages because of the invalidity of a sale must allege such invalidity. See Holloway v. Miller (Tex. Civ. App.) 272 S. W. 562, 563. Some of these cases and others are reviewed in a good analysis in Blackwell v. General Motors Acceptance Corp. (Tex. Civ. App.) 54 S.W.(2d) 251, 253, holding that the defense must be specially pleaded.

With this last decision cited we agree. The instant case is an example of the wisdom of the rule. It might be that a legal number was assigned to this car. Appellee cannot say yea or nay, for it requires an inquiry at Austin, 200 miles away, or elsewhere farther away—an inquiry he is not called on to make until he is warned of some attack to be made on his title. He cannot vouch to the court that he can produce any new evidence and ask for a continuance thereon. The defense not appearing in the plaintiff's action must be pleaded.

However, plaintiff made no objection to it. Had he done so the appellant might have been able to obtain leave to amend.

We consider the ends of justice will be best preserved by remanding the cause in order that the pleadings may be amended, setting out the contentions of the parties.

Reversed and remanded.