## MANUFACTURERS' FINANCE CORPORATION v. FORT WORTH PAPER CO.

### No. 12893.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 21, 1933.

Rehearing Denied Jan. 6, 1934.

Marvin H. Brown, Jr., and M. Hendricks Brown, both of Fort Worth, for appellant.

Sam J. Callaway, James E. Whitmore, and Robert C. Pepper, all of Fort Worth, for appellee.

DUNKLIN, Justice.

On April 23, 1929, Freed Eisemann Radio Corporation, having its place of business in New York City and engaged in the manufacture and sale of radio sets and equipment, entered into a contract in writing with the Fort Worth Paper Company, engaged in business in Fort Worth, Tex. In this contract the radio corporation was designated as "manufacturer" and the Fort Worth Paper Company as "distributor," and by its terms the paper company was appointed wholesale distributor in Fort Worth and the northern part of the state of Texas of the products of manufacturer. The distributor agreed to purchase a certain quota of such articles and to carry at all times a representative stock of products.

Paragraphs 10 and 11 of the contract read as follows:

10. "The Distributor agrees to act as the wholesale distributor of the Manufacturer within the territory specified in Paragraph One hereof, and to maintain at the Distributor's expense an office and show room within the territory hereby assigned, with an efficient service department and sales force adequately equipped to service and sell at wholesale the Manufacturer's products."

11. "The Distributor agrees not to sell, advertise, offer or display for sale, any radio sets, speakers, parts or tubes other than those furnished by the Manufacturer, during the term of this agreement."

The contract stipulated that it should continue in force from its date, April 23, 1929, until the 31st day of March, 1930, subject to termination within that period on certain contingencies not necessary to mention.

Under and by virtue of that contract the manufacturer sold to the distributor certain of its products; and an account for the products so sold, showing an aggregate of $12,139.40 as the amount due for such sales, was

transferred and assigned by the manufacturer to Charles Freshman Company, Inc., on August 29, 1929; and on the same day that company sold and assigned the account to the Manufacturers' Finance Corporation for a consideration then paid of $8,497.58.

The Fort Worth Paper Company wrote the following letter, dated January 31, 1930, to attorneys in whose hands the account had been placed for collection by the Manufacturers' Finance Corporation:

"Gentlemen:

"Please refer to your letter of January 17th, and your wire January 30th, regarding Freed-Eisemann Radio Corporation invoice of August, 19th, 1929, #17745, ownership of this invoice claimed by Manufacturers Finance.

"In your notice of December 3rd, you show the balance on this invoice to be $7,139.40, whereas our records show the balance due to be $7,142.07. We are ready to take care of this amount as soon as we are authorized to do so by the receivers. As yet we have not heard from them other than a receiver had been appointed but nothing definite as to who.

"Very truly yours,

"Fort Worth Paper Company.
"L. A. McWhirter, President."

Thereafter the Fort Worth Paper Company wrote other letters to the same attorneys, one dated April 21, 1930, reading as follows:

"Gentlemen:

"We are enclosing herewith our check for $2,139.40 to apply on balance of Freed-Eisemann Radio Corporation. This leaves a balance due on this account of $5000.00, which we will endeavor to take care of in the near future."

Another dated May 12, 1930, as follows:

"Dear Sir:

"We are enclosing herewith our check for $1000.00 to apply on our account. We will send you another check for at least $1000.00 along about the first of June and will liquidate the balance just as quickly as possible. We trust this meets with your approval."

Another dated July 17, 1930, as follows:

"Gentlemen:

"Attached is our check made payable to Freed Eisemann Radio Corporation in the amount of $1000.00, check No. 4767. Please credit our account for this amount."

This suit was instituted by the Manufacturers' Finance Corporation against the Fort Worth Paper Company to recover the balance alleged to be due after allowing the credits indicated by the letters shown above.

The chief defense presented to the suit was that the contract, under and by virtue of which the goods were sold, constituted a trust which was forbidden by the provisions of article 7426, Rev. Statutes, and by reason thereof was illegal and absolutely void and unenforceable under the terms of articles 7429 and 7437, Rev. Statutes. The trial court sustained that defense and denied plaintiff a recovery, from which it has prosecuted this appeal.

Article 7426, Rev. Statutes, reads in part as follows:

"A 'trust' is a combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons, or either two or more of them for either, any or all of the following purposes:

"1. To create, or which may tend to create, or carry out restrictions in trade or commerce or aids to commerce or in the preparation of any product for market or transportation, or to create or carry out restrictions in the free pursuit of any business authorized or permitted by laws of this State. * * *

"3. To prevent or lessen competition in the manufacture, making, transportation, sale or purchase of merchandise, produce or commodities, or the business of insurance, or to prevent or lessen competition in aids to commerce, or in the preparation of any product for market or transportation."

Article 7429 reads:

"Any and all trusts, monopolies and conspiracies in restraint of trade, as herein defined, are prohibited and declared to be illegal."

Article 7437 reads:

"Any contract or agreement in violation of any provision of this subdivision shall be absolutely void and not enforcible either in law or equity."

██ We believe it clear that the contract under which the goods in controversy were sold was in violation of the provisions of article 7426, and therefore the purchaser's agreement to pay for the products so purchased was "absolutely void and not enforcible either in law or equity," under the provisions of article 7437. Texas & Pacific Coal Co. v. Lawson, 89 Tex. 394, 32 S. W. 871, 34 S. W. 919; Wood v. Texas Ice & Cold Storage Co. (Tex. Civ. App.) 171 S. W. 497; American Brewing Ass'n v. Woods (Tex. Com. App.) 215 S. W. 448; Henderson Tire & Rubber Co. v. Roberts (Tex. Com. App.) 12 S.W.(2d) 154; 10 Tex. Jur. p. 185, § 107.

Appellant contends that the letters written by the defendant, copied above, with remittances therein referred to and the acceptance thereof by the plaintiff, were in legal effect a "stated account" upon which the suit was based; that it was entitled to recover thereon without the aid or assistance of the original contract between the manufacturer and the distributor, and therefore the illegality, if any, of the original contract under which the goods were purchased, constituted no defense. The authority especially stressed to support that contention is the opinion of the Court of Civil Appeals in Fred Miller Brewing Co. v. Coonrod, 230 S. W. 1099, 1102, in which case a writ of error was refused by the Supreme Court. That suit was upon a check for the sum of $1,535.60, drawn on a bank in plaintiff's favor. The defense urged to it was that the check was issued for the payment of a certain beverage known as "Vivo," sold under a contract which was violative of the anti-trust statutes of the state, and further that it was executed by reason of plaintiff's threat that, unless he did execute it, plaintiff would withhold from him a certain life insurance policy in defendant's favor which plaintiff held as collateral security for a prior contract. In that case the court said:

"The test is whether or not the settlement between the parties resulted in the execution of such an obligation as that it shall be regarded as enforceable without the aid or assistance of any part of the illegal transaction, and, if so, it is enforceable."

Numerous decisions are then cited in support of that announcement. The court then held that, since the release of the insurance policy was an additional consideration for the obligation sued on, the defense of illegality was unavailing.

The letters relied on by appellant did not in any manner indicate that there had been a controversy between the parties as to the amount or the justness of the account for the goods purchased; they were no more than an acknowledgment of the debt and a promise to pay, with no new consideration therefor, such as was true in the Coonrod Case, and therefore tainted with the same vice as was the original contract of purchase which was rendered void by the statutes.

The evidence relied on to support plaintiff's plea of estoppel against the defendant to urge the defense in question was in substance that plaintiff paid a valuable consideration for the account sued on, and, during the period of time covered by defendant's letters inclosing remittances to be applied on the account and promising to pay the balance, both the two assignors of the account were taking steps to liquidate their indebtedness and cease business, and finally did cease business after their affairs had been taken over in receivership proceedings, all with defendant's knowledge. That evidence was insufficient to establish an estoppel, in the absence of further proof that but for such action on the part of the defendant plaintiff could and would have collected the account from one or the other of those assignors, even under the rules applicable to a case not involving a contract denounced by statutes as absolutely void. The following announcement in 10 Tex. Jur. p. 260, § 149, is well sustained by numerous decisions there cited: "The effect of illegality of a contract cannot be waived by the parties, and nothing that they may do can give it validity. So an illegal contract cannot be ratified by either party. Nor, as a rule, can the parties to such a contract render it enforceable by acts which under ordinary circumstances would operate upon them as an estoppel."

Decisions cited by appellant sustaining pleas of estoppel will not be discussed, since those cases are distinguishable from this case on the facts, and especially since they did not involve contracts condemned by statutes as void.

The judgment of the trial court is affirmed.