COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 


 
 
  
 COMPLETE AUTO
 SALES, INC.,
  
                             Appellant,
  
 v.
  
 ADT AUTOMOTIVE, INC., d/b/a
 DALLAS AUTO AUCTION, INC., AUCTION TRANSPORT, INC., AND ADT AUTOMOTIVE
 HOLDINGS, INC.,
  
                             Appellees.
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
    
  ' 
  
 
 
  
  
                 No. 08-01-00399-CV
  
 Appeal from
  
 160th District Court
  
 of Dallas County, Texas 
  
 (TC# DV99-09392-H)
  
 
 


O P I N I O N

 

Complete Auto Sales, Inc. appeals an
adverse summary judgment.  Appellant
brings one issue, whether the trial court properly granted the multiple
appellees= motions for summary judgment on
appellant=s anti-trust claims.  We will affirm.

Background








Appellant brought both contract and
anti-trust actions against appellees, ADT Automotive, Inc. d/b/a Dallas Auto
Auction, Inc., Auction Transport, Inc. and ADT Automotive Holdings, Inc.  Appellees filed two partial motions for
summary judgment, one on the contract claims and a second on the anti-trust
claims.  Both partial motions were
brought under the no-evidence rule, Tex.
R. Civ. P. 166a(i) and the senior summary judgment procedure under Tex. R. Civ. P. 166a(c).  The trial court granted both motions, and
entered a final judgment against appellant, denying all claims it
asserted.  Appellant only complains about
the trial court=s summary judgment on its anti-trust claims.  The anti-trust claims were for permanent
injunction from preventing appellant from soliciting business on the premises
of Dallas Auto Auction and damages.  The
anti-trust action was based upon an allegation of monopoly and a claim of
combination or conspiracy in restraint of trade or unlawful tying under Tex. Bus. & Com. Code Ann. ' 15.05 (Vernon 2002) (prohibits
monopolies or attempts to monopolize).








Dallas Auto Auction, owned and
operated by the other appellees,[1]
runs an automotive auction house in the Oak Cliff section of Dallas.  According to the proof, there are four major
auto auctions in the Dallas-Fort Worth area: 
(1) Manheim=s Fort Worth Auto Auction; (2) Adesa Auctions in Mesquite;
(3) Manheim=s Dallas Auto Auction; and (4)
Manheim=s Dealer=s Auto Auction in Grand Prairie.  Dallas Auto Auction held exclusive rights in
the area for the manufacturers= auction of General Motors and Daimler Chrysler
vehicles.  These manufacturer auctions
are stated to generate the most profitable transportation fees because of the
volume of sales to dealers and their willingness to pay more in order to
guarantee timely delivery.  Until
appellee Dallas Auto Auction=s letter of November 8, 1999, appellant and others could
solicit and compete for vehicle delivery services on the premises of Dallas
Auto Auction.  After the effective date,
December 8, 1999, only Dallas Auto Auction=s sister company, Auction Transport,
Inc. could solicit business on the auction house premises.  The letter stated the reasons for the
discontinuation of outside solicitors to be efficiency, security, and
liability.  The prohibition epistle went
on to state Adealers will continue to have the
unbridled ability to contract with you with respect to their transportation
needs@ and Ayou will be permitted to deliver or
pick-up vehicles at the auction . . . .@

Appellant argues that forbidding
on-site solicitation substantially restricts its ability to garner vehicle
transportation business, in violation of state anti-trust law.

Standard of Review

Appellees= summary judgment motions were argued
variously under both the traditional and no-evidence standards.  We treat them as hybrid motions.








            In a no-evidence summary judgment, a
party is entitled to summary judgment if there is no evidence of one or more
essential elements of a claim or defense on which an adverse party would have
the burden of proof at trial.  Tex. R. Civ. P. 166a(i).  In reviewing a no-evidence summary judgment,
we apply the same legal sufficiency standard as in a directed verdict.  Chapman v. King Ranch, Inc., 41 S.W.3d
693, 698 (Tex. App.--Corpus Christi 2001, pet. filed).  A no-evidence summary judgment is proper if
the respondent fails to bring forth more than a scintilla of probative evidence
in support of one or more essential elements of a claim.  Tex.
R. Civ. P. 166a(i); see also Bowen v. El Paso Elec. Co., 49
S.W.3d 902, 905 (Tex. App.--El Paso 2001, pet. denied) ( party moving for
no-evidence summary judgment must specifically state the elements as to which
there is no evidence, then the burden shifts to the non‑movant to produce
evidence raising a fact issue on the challenged elements).

 _ traditional summary judgment is
proper only when the movant establishes there is no genuine issue of material
fact and it is entitled to judgment as a matter of law.  Tex.  R. Civ. P. 166a(c); Lear Siegler,
Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991).  A trial court properly grants summary
judgment in favor of a defendant if the defendant conclusively establishes all
elements of an affirmative defense, or conclusively negates at least one
element of the plaintiff=s claim.  American
Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).  We review the evidence in the light most
favorable to the non-movant, disregarding all contrary evidence and
inferences.  Randall=s Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995).

Analysis













As aptly noted by appellant, to
establish an illegal monopoly, a plaintiff must show (1) the defendant=s possession of monopoly power in the
relevant market, and (2) the willful acquisition or maintenance of that power
as distinguished from growth or development as a consequence of a superior
product, business acumen, or historical accident.  Caller‑Times Pub. Co., Inc. v. Triad
Communications, Inc., 826 S.W.2d 576, 580 (Tex. 1992).  The more narrow issue presented to the trial
court, and correspondingly to us, challenges the applicability of anti-trust
prohibitions to a private property owner=s right to govern the use and
occupancy of its own premises.  See
Clisbee v. Chicago, R.I. & G. Ry. Co., 230 S.W. 235, 237 (Tex. Civ.
App.--Fort Worth 1921, writ ref=d).  Appellant properly
acknowledges a line of cases that hold the inapplicability of anti-trust laws
based upon an exclusive right or privilege of use or access upon real
property.  See State v. Gulf Refining
Co., 279 S.W. 526 (Tex. Civ. App.--Austin 1925, writ ref=d) (recognizing four exceptions to
the rule that exclusive contracts are prohibited monopolies:  (1) a contract of agency wherein an agent is
prohibited from dealing for himself or representing others besides his
principal; (2) a contract for the sale of a business in which the seller agrees
for a limited time not to engage in a competing business within a limited
territory; (3) a lease contract where the lessee agrees on the leased premises
to sell only certain products; and (4) cases in which an exclusive right or
privilege is granted only upon the property or premises of the grantor)
(emphasis added); Airport Coach Service, Inc. v. City of Fort Worth, 518
S.W.2d 566, 572 (Tex. Civ. App.--Tyler 1974, writ ref=d n.r.e.) (airport is  owned exclusively by the cities of Dallas and
Fort Worth; therefore grant of exclusive contracts for ground transportation
service would not be a prohibited monopoly); Redland Fruit Co. v. Sargent,
113 S.W. 330, 331 (Tex. Civ. App. 1908, no writ) (property owner has the right
to say who shall or who shall not use his premises for any such purpose; right
to give an exclusive contract for the purpose of any business is involved in
every lease) (citing Ft. Worth & D. C. Ry. Co. et al. v. State, 99
Tex. 34, 87 S.W. 336, 70 L.R.A. 950 (Tex. 1905); Lewis v. Railway Co.,
81 S.W. 111 (Tex. Civ. App. 1904, writ ref=d)) (privilege of selling goods upon
the premises of another is not derived from the laws of the state, but from the
consent of the owner).

Against this acknowledged authority,
appellant cites but one case.  See
Texas & P. Coal Co. v. Lawson, 89 Tex. 394, 34 S.W. 919 (1896).  Lawson is a fascinating, turn of the
century before last, proceeding.  There
the coal company leased a saloon with exclusive rights to sell liquor to
lessee, with a covenant to permit no other liquor sales on its property.  The coal company also then issued checks to
its employees, redeemable at the saloon. 
Id. at 920.

It is
apparent from the face of the contract that the purpose of the parties in
entering into the combination evidenced thereby was, as far as they might be
able, (1) to restrain any other person from entering into the business of
selling liquors to the people of Thurber during the lease; (2) to prevent the
employés [sic] of the company from purchasing liquors from any one other than
Lawson; and (3) to influence such employés to squander their earnings in the
saloon, erected and maintained, under the terms of the contract, principally
for the benefit of the employer.  This is
all apparent from the agreement not to permit any one else to sell liquors on
the company=s lands, added to the very extraordinary agreement
that the company should, during the term of the lease, which might have been 10
years, issue checks to its laborers, instead of paying money, and redeem weekly
such of those checks as Lawson might take in for liquors sold at such saloon.

 








Id.  This vertically integrated sales scheme was
found by the court to prevent others from entering the business, to prevent
employees from buying liquor elsewhere and the Aextraordinary@ issuance of checks in lieu of money,
redeemable (only) at Lawson=s saloon.  Id.  Other than the restricted use of the
premises, none of these other factors found by the Supreme Court are present in
our scenario.

Closer in fact and law, is Clisbee.  There the Fort Worth court held:  A[T]he weight of authority supports
the conclusion of the trial court maintaining the right of appellee to exclude
appellants and other hackmen from intruding upon its grounds for the purpose of
soliciting transportation for passengers.@ 
Clisbee, 230 S.W. at 236. 
Exactly as in Clisbee, appellant and other transporters similarly
situated, were not prohibited from entering Dallas Auto Auction=s premises in order to preform their
services.  See id.  The prohibition was solely solicitation upon
the premises.  Id.  Specifically, the letter prohibiting
appellant=s solicitation on the owner=s premises, allowed full access for
the performance of contracts appellant and others had or could have, for the
delivery of vehicles.  That there was no
anti-trust violation could have been and probably was decided as a question of
law by the district court.  Appellant
does not present contrary legal authority or material facts precluding summary
judgment.  See Giddings Petroleum
Corp. v. Peterson Food Mart, Inc., 859 S.W.2d 89, 94 (Tex. App.--Austin
1993, writ denied).

Accordingly, we hold, that under the
proof presented, appellant has not shown material evidence of an illegal
monopoly.  Clisbee, 230 S.W. at
236; Bowen, 49 S.W.3d at 905. 
Appellant=s sole issue is overruled.








The judgment of the trial court is
affirmed.

 

                                                                           


DON
WITTIG, Justice

 

October 3, 2002

 

Before Panel No. 5

Barajas, C.J., Larsen, and
Wittig, JJ.

(Wittig, J., sitting by
assignment)

 

(Do Not Publish)

 











[1]Dallas
Auto Auction is owned and operated by ADT Automotive, Inc., which in turn is a
wholly owned subsidiary of ADT Automotive Holdings, Inc.  The holding company also owns Auction
Transport, Inc. whom we presume to be a direct competitor of appellant.