### Columbia Carriage Company v. W. H. Hatch.

Delivered May 21, 1898.

**1. Trusts—Illegal Contract.**

A contract which provides that the first party is to ship vehicles to the second and to others upon his order, and that the second is to sell them at certain fixed prices and make settlement therefor, and which does not provide for the retention of the title of the property in the first party, and makes no provision for the compensation of the second party, will be deemed a contract of sale rather than of an agency to sell, and a provision thereof that the second shall handle no vehicles other than those furnished by the first party, and that the first party will not permit its vehicles to be handled by other parties in the State, except at a certain place, invalidates the contract under the statute against trusts and conspiracies against trade.

**2. Same—Notes Tainted With the Illegality.**

Notes executed for articles purchased under and in pursuance of the terms of a contract which is invalid under the statute against trusts and conspiracies against trade, are void and will not support an action.

APPEAL from Dallas. Tried below before Hon. EDWARD GRAY.

*Crawford & Crawford,* for appellant.

*Porter & Cohron,* for appellee.

FINLEY, CHIEF JUSTICE.—This is a suit by the plaintiffs, T. L. Curley and R. L. Hedges, citizens of the State of Ohio, partners under the name and style of Columbia Carriage Company, against W. H. Hatch, defendant, for $4998.68, besides interest and protest fees, alleged to be due on two promissory notes—one for $2412.18, dated July 22, 1895,

and due at four months; the other dated October 3, 1895, for $2586.50, due at four months after date, executed by the defendant.

After first setting out the contract in full, which was afterwards introduced in evidence, the defendant specially pleaded: "That said contract was executed and delivered to him by plaintiff at Dallas, Texas, where he resided. That said contract was signed by defendant and accepted and ratified then and there by the plaintiff. That in pursuance of said contract plaintiff sold and delivered to defendant goods amounting to several thousand dollars; that the defendant executed the notes mentioned in plaintiff's petition for goods which had been shipped to the defendant under the contract heretofore set out in this answer, and that the notes so executed were the notes contemplated in the contract at the time said contract was executed.

"Defendant further says that the contract set out and entered into is prohibited by the statute of the State of Texas, by the Act of March 30, 1889, entitled 'An act to define trusts and provide for penalties and punishments of corporations, persons, firms, and associations to promote free competition in the State of Texas,' which act is found on pages 905-906 in the Supplement of Sayles' Texas Civil Statutes, and here made a part of the answer. That the contract entered into and heretofore set out in this answer embodies a combination of capital and skill, and was created for the purpose of carrying out restrictions in trade, and to prevent competition by the plaintiff for the sale of its goods in the State of Texas, which contract obligated this defendant to purchase from the plaintiff to the exclusion of all similar grades of goods, and which the plaintiff obligated itself to furnish to this defendant, and to no other person except this defendant in the State of Texas, save in the town of San Antonio, which contract this defendant pleads and relies upon as a defense to plaintiff's cause of action, being in violation of the said statute law of the State of Texas; and defendant says that all action taken thereunder is void in so far as this defendant is concerned, and in so far as this plaintiff seeks to establish any liability against this defendant, and this plaintiff has no right to further prosecute this suit against this defendant—and for this, defendant puts himself upon the country and prays to be dismissed with his costs.

"The defendant further pleads damages and partial payments in set-off —his payments being on the notes sued on by plaintiff, in full, except the sum of $1958.49, which payments are specially set out, and consist, among other just credits, of customers' notes indorsed by this defendant in accordance with the terms of the contract, amounting to the sum total of $2538.19."

These facts were proven on the trial:

The plaintiff read in evidence the two notes sued on, one due November 22, 1895, for $2412.18; the other due February 3, 1896, for $2586.50. Plaintiff also read in evidence and surrendered for cancellation a note for $2387.75, dated September 16, 1895, and due at four months—the

last note mentioned being the one described in defendant's answer, and alleged to have been paid.

Defendant read in evidence the following contract:

"DALLAS, TEXAS, October 29, 1894.

"Columbia Carriage Company, Hamilton, Ohio:

"Dear Sirs—In consideration of your giving me the exclusive sale of the vehicles you manufacture for the State of Texas, excepting therefrom the town of San Antonio, from January 19, 1895, and up to October 30, 1895, I agree to handle and sell your work free of all expense to you, and to the exclusion of all similar grades of work, at prices, terms, and conditions herein mentioned. I further agree to canvass the State thoroughly by correspondence and personal solicitation of my traveling salesmen, making all possible efforts to sell your vehicles to responsible dealers throughout the State. I further agree to forward settlements for all goods shipped on my orders, within thirty days from date of shipments, by remitting for same in cash less 5 per cent, or by responsible customers' notes, indorsed by me, according to terms and conditions herein mentioned.

"W. H. HATCH.

"Accepted by Columbia Carriage Co., per J. E. Wright."

[Then follows a specification of the prices of vehicles and their equipments.]

Terms and Conditions.—"All goods are to be settled for with customers' notes, indorsed by Mr. W. H. Hatch, running not over four months for all goods shipped on Mr. Hatch's orders.

"Mr. Hatch is to have the privilege of making the terms on all carload orders that are taken for shipment during the months of January, February, and March four months notes, with privilege of renewing same for four months on all goods unsold, said renewal notes to bear interest at 8 per cent per annum. Terms on carload shipments made during April and May are to be four months notes as above, with privilege of renewing for two months at the above mentioned rate of interest on all goods unsold. All of the above renewals to apply only to full carload shipments made directly to customers. Mr. Hatch is also to have above privileges on renewal on all goods shipped during above months to him at Dallas.    "W. H. HATCH.

"Accepted by Columbia Carriage Co., per J. E. Wright."

It was shown by Mr. Hatch, the defendant, that the contract was executed in Dallas, Texas. Under this contract, and in pursuance of the terms thereof, Hatch purchased certain goods from the plaintiff, and the notes sued on were executed in payment for the goods so purchased.

It was proven that the defendant had made various payments on the notes sued on, as alleged in his answer, and that on December 5, 1895, said notes had all been paid except the sum of $1958.49.

Upon these facts the trial judge pronounced the legal conclusion, that the contract was in violation of the statute law of this State defining trusts and combinations in restraint of trade, and gave judgment for the defendant.

*Opinion.*—The first question presented for consideration and decision is this: Is the contract between Hatch and the Columbia Carriage Company in violation of our statute against trusts and conspiracies against trade, namely, article 5313, Revised Statutes?

If the contract is to be construed as one regulating and controlling the purchase and sale of articles of merchandise between the contracting parties—Hatch and the Columbia Carriage Company—it is quite clear that it would come within the prohibitions of the statute. Upon the one hand, it provides that Hatch is to handle no goods of this character from any other factory; and, upon the other, that the Columbia Carriage Company is not to permit any of the goods to be handled by other persons in the State, except at San Antonio. By these provisions competition with Hatch is prevented, and the exclusive privilege to sell to Hatch is secured by the Columbia Carriage Company.

In Fuqua v. Brewing Company, 90 Texas, 298, such a contract was held violative of the statute, and void. See also Coal Company v. Lawson, 89 Texas, 394. If, however, the contract is to be construed as entered into for the purpose of creating an agency, under which Hatch was to sell the goods of the Columbia Carriage Company, as its agent, then it would not come within the terms of the statute, and could not be deemed violative thereof. Welch v. Windmill Co., 89 Texas, 653.

This brings us to the construction of the contract. The court below treated it as a contract for purchase and sale, and found, as a fact, that Hatch purchased the goods of the Columbia Carriage Company under it and in pursuance of its terms, and that the notes sued on were executed in consideration of the goods so purchased. There is no assignment of error questioning the correctness of this finding of fact. The contract is clearly not one of immediate sale and purchase; if any sale and purchase is therein contemplated it was to be made in the future. It is equally clear that an agency is not expressly created by the terms of the contract. We must therefore look to the substantial elements of the contract to determine the intent and purpose of the parties.

Was it the intention of the parties that Hatch should become the agent of the Columbia Carriage Company for the sale of the articles named in the contract? Ordinarily, a contract of agency expressly declares that one of the parties is thereby made the agent of the other; states the object of the agency, and the powers to be exercised, and provides for the compensation of the agent for his services to be rendered for the principal. We do not mean to say a contract of agency must contain all such provisions, but only that such are the usual provisions. Where the agent is to be intrusted with the possession and power to sell the personal property of the principal, we usually find some provision for the return of the

property in case the sale is not effected. In the contract under question we find none of these indications of agency. The contract fails to expressly declare the agency; it does not provide that the title of the property is to remain in the Columbia Carriage Company; it makes no provision for the return of the property in case it be not sold, and it does not appear therefrom that Hatch is to be compensated for his services by commissions or money to be paid by the Columbia Carriage Company. On the other hand, it clearly appears from the terms of the contract that the Columbia Carriage Company is to ship to Hatch, and others upon his order, the articles which are the subject of the contract, and that Hatch is to become personally bound and make settlement therefor. These are characteristic elements of contracts for purchase and sale of articles of merchandise between merchants; and in the absence of other provisions in the contract which would neutralize their effect, we think they should control in determining the question. Williams v. Tobacco Co., 44 S. W. Rep., 185, and cases there cited. The parties to the contract treated it as a contract for purchase and sale, as we learn from the findings of the court that the notes sued on were executed in consideration of purchases made by Hatch of the Columbia Carriage Company under and in pursuance of the terms of the contract. As before stated, there is no assignment of error attacking this finding of fact as not warranted by the evidence, and we must treat the fact as established.

In our opinion the contract should be treated as an agreement entered into by the parties, intended to govern and control contemplated future purchases and sales of the articles mentioned. This conclusion leads us to the further determination, that the contract is in violation of our statute against trusts and conspiracies against trade, and for that reason void.

2. It is further contended that the illegal character of the contract should not defeat a recovery upon the notes, as no aid from such contract is required to establish plaintiff's right to recover upon such notes: citing the cases of DeLeon v. Trevino, 49 Texas, 93; Pfeuffer v. Maltby, 54 Texas, 461; Brooks v. Martin, 2 Wall., 70.

If these notes, as found by the court, were executed for articles purchased under and in pursuance of the terms of the contract, then the provisions in restraint of trade contained in the contract became part of the consideration, and those provisions being in violation of our statute, tainted the transaction and rendered the notes void. In the case of Wegner Bros. v. Biering, 65 Texas, 509, Mr. Associate Justice Robertson said: "It is obvious that there is ample valid consideration to support the promise sued on; yet if, to the abundance of valid consideration, there has been added a leaven of what is illegal, the whole contract is tainted. Story on Cont., sec. 583; Bish. on Cont., sec. 471; Pollock on Cont., sec. 318. If a debtor, in payment of an account for $100, and in consideration that his creditor will refrain a duty or do an illegal act, executes his note only for the amount of the account, the note is nevertheless void. The good consideration has no virtue to cure the bad, but

the bad corrupts the whole." See also Shelton v. Marshall, 16 Texas, 353; Seligson v. Lewis, 65 Texas, 215; Wiggins v. Bisso, decided by this court at present term.

We do not think this case comes within the cases cited by appellant in support of its proposition. We are of the opinion that the notes sued on were tainted by the illegal consideration entering into them, and that the court below correctly held that no recovery should be had thereon. The judgment is affirmed.

*Affirmed.*

Writ of error refused.