STATE v. WILLYS–OVERLAND, Inc.
(No. 6197.)

(Court of Civil Appeals of Texas. San Antonio. April 16, 1919. On Motion for Rehearing, May 15, 1919.)

1. MONOPOLIES ⬤═➤24(2)—INJUNCTION—COMBINATION CREATING RESTRICTIONS ON BUSINESS.

In suit for injunction by state against automobile company, existence between company and its selling agents, to whom it really sold its cars for resale, of a combination of acts not only tending to create, but actually creating and carrying out restrictions in the free pursuit of a business permitted by law, also preventing or lessening competition in the sale of commodities, that is, automobiles, in violation of Rev. St. 1911, art. 7796, *held* established.

2. COMMERCE ⬤═➤40(3)—MONOPOLIES ⬤═➤17(1) —INTERSTATE COMMERCE—SALE AND RESALE OF PROPERTY.

When property is sold and delivered to a resident of the state free from any claim of title by the seller, and is held for resale by re-

tail in the state, it becomes subject to the anti-trust laws of the state, and is not a subject of interstate commerce, though the buyer is termed the agent of the seller.

Appeal from District Court, Travis County; George C. Calhoun, Judge.

Suit by the State of Texas against the Willys-Overland, Incorporated. From judgment for defendant, plaintiff appeals. Judgment reversed, and rendered for plaintiff.

C. M. Cureton and W. A. Keeling, both of Austin, for appellant.
Thos. H. Ball, of Houston, for appellee.

MOURSUND, J. This is a suit filed March 1, 1916, by the state against Willys-Overland, Incorporated, a corporation organized under the laws of Ohio, and having its principal place of business at Toledo, Ohio. It was alleged in the amended petition, on which trial was had, that defendant had no permit to engage in business in Texas, but that since July 1, 1915, it has been selling automobiles and automobile accessories and supplies to dealers and distributors throughout said state, through its agents and representatives, which sales were made at the respective places of business of its said dealers and distributors; that such automobiles, accessories, and supplies, so sold, have been shipped by defendant from Toledo to the dealers and distributors in Texas, and there distributed among, mixed and mingled with the other goods of such dealers and distributors, and have become a part of their respective stocks, and have been sold by them throughout the state. Plaintiff further alleged:

"That under the defendant's system of business in the state of Texas it sells its automobiles and automobile accessories and supplies to dealers and distributors for resale, and said dealers and distributors are given, by the defendant, by virtue of a contract made and entered into between the defendant and said dealers and distributors, a certain fixed territory in which to resell said automobiles and automobile accessories and supplies, the defendant agreeing with its said dealers and distributors not to sell to any other person in said territory and said dealers and distributors agreeing with the defendant not to sell any other automobiles and automobile accessories and supplies in said territory than those purchased from the defendant, and further agreeing not to sell the automobiles and automobile accessories and supplies purchased from the defendant to any person or persons outside of said designated and fixed territory."

In paragraph 4 it is charged that on or about July 1, 1915, for the purpose "of creating and tending to create and carry out restrictions in the state of Texas in the sale of automobiles, and automobile accessories and supplies," and for the "purpose of preventing

and lessening competition in the sale of said articles and commodities in said state," the defendant made and entered into a combination and agreement with the Overland Automobile Company of Dallas, Tex., one of its dealers and distributors, to the effect that on and after the date of such contract it would sell its automobiles, accessories, and supplies to said Overland Automobile Company for resale in a certain designated and fixed territory, defendant agreeing not to sell said commodities to any other person in said territory, and said company agreeing not to sell said commodities outside of said territory, and further agreeing not to sell any other automobiles and automobile accessories and supplies than those purchased from the defendant; that such combination and agreement was continuously observed and carried out until the date of the filing of the amended petition, and that each of the parties performed the things therein agreed to be performed by it, and refrained from doing the things therein stipulated as not to be done by it.

In paragraph 6 it is charged that on July 1, 1916, for the same purposes as are enumerated in paragraph 4, the defendant entered into a combination and agreement with the Overland-Houston Company of Houston, one of its dealers and distributors, whereby it agreed that on and after the date of said contract it would sell its automobiles and automobile accessories and supplies to said Overland-Houston Company for resale in a certain described territory, composed of Harris county and other counties, and elsewhere in Texas, the said company agreeing not to sell any other automobiles, accessories, and supplies in said territory or elsewhere than those purchased from defendant; that, although on the face of the contract said company is authorized to sell the said commodities purchased from defendant elsewhere than in the described territory, it was the intention of said parties to limit the right of said company, to sell such commodities, to said described territory; that for the purpose of effectuating the intent of the parties the following provision was incorporated in the contract, to wit:

"That the dealer [the Overland-Houston Company] shall be entitled for all current models of Overland and Willys-Knight automobiles purchased hereunder and sold by him in the district hereinbefore designated, to the discount applying to this contract as provided in said Schedule A, provided that for any current models of such automobiles sold by the dealer, and within sixty days next after actual delivery thereof to the purchaser, shall be taken from said district into and used for a period of one hundred twenty days in some district other than the one herein designated, the dealer shall in such case only be entitled to and receive fifty per cent. of the discount applying to this contract as provided in said Schedule A, the remaining fifty per cent. of such discount to be

paid to the distributor in a district into which same shall have been taken and so used, as compensation to such distributor or dealer for advertising Overland and Willys-Knight automobiles, keeping on hand sufficient stock of repair parts, giving proper service to the owners thereof in such district, etc., and likewise the dealer herein shall be entitled to and receive fifty per cent. of the discount on all current models of said automobiles which are sold outside of said district, and within sixty days after actual delivery thereof to the purchaser, come into said district and be used therein for a period of one hundred twenty days thereafter; provided the dealer within sixty days after such automobiles not sold in said district have come into the same, notifies the distributor of such fact in writing; and provided further, that the distributor shall be the sole judge and arbiter of the rights of the dealer to any such discount, and may pay, credit or charge the same to the dealer or his account in such manner as it shall deem to be just and equitable to all parties concerned."

It was then alleged that by virtue of said provision said company, if it should make a sale outside of the described territory, would receive only half the discount it would receive if the sale was made within such territory; that the purpose of such provision was to restrict said company, in its right to resell the commodities purchased from defendant, to the territory described in the contract, and the parties so understood said provision and have so interpreted and carried out the same; that they understood and intended by said provision to prohibit said company from selling the commodities purchased from defendant to any person residing outside of the described territory, and also to prohibit defendant from selling its said commodities to any other person or persons in such territory, thereby giving said company the exclusive right to sell said commodities in said territory; that such agreement and combination became effective on or about July 1, 1916, and has been continuously observed, respected, maintained and carried out until the date of the filing of the amended petition, and in pursuance thereof the defendant has refused to sell its said commodities to any other person in said territory and said company has refused to sell said commodities purchased from defendant to persons other than those residing in said territory, and has also refused to sell in said territory or elsewhere any other automobiles or accessories and supplies than those purchased by it from defendant.

Plaintiff alleged further that by observance and maintenance of each of such pleaded agreements and combinations defendant was and is guilty of violating the provisions of articles 7796 and 7798 of the Revised Civil Statutes of 1911.

The petition closed with a comprehensive prayer for relief by injunction, but no prayer for the recovery of penalties. The defendant

answered by general demurrer and general denial. The trial resulted in a judgment denying plaintiff any relief.

To substantiate the averments contained in paragraph 4 of the amended petition, there was introduced in evidence a contract with the Woodward Carriage Company, admitted to be exactly like the contract with the Overland Automobile Company of Dallas complained of in paragraph 4 of the amended petition. This contract purports to be that of the Willys-Overland Company, and the witness Graham, president and general manager of the Overland-Houston Company, testified that new contracts are made every six months. While the witness testified that the defendant corporation, Willys-Overland, Incorporated, which is a sales company for Willys-Overland Company did not come into existence until the year 1916. He probably meant that it did not make contracts until 1916, for he also testified that it had had a permit to do business in the state since about the first of the year 1916, and the contract between the Overland-Houston Company and Goldthwaite (Exhibit B), in which the defendant corporation is continually referred to and not the Willys-Overland Company, is dated January 3, 1916. He testified that such contract was not made until in March, 1916, after the filing of this suit, and if that be true, it was probably dated back to correspond with the date of the contract it replaced. The witness did not always distinguish between the two corporations, for he speaks of purchasing from defendant in 1915. While the contract described in paragraph 4 doubtless expired on January 1, 1916, the evidence clearly shows that at the time the suit was filed there was in existence a similar contract between defendant and the Overland Automobile Company of Dallas.

The contract referred to in paragraph 4, and used by defendant at the time the suit was filed, contained the provision that the dealer should have the right to sell automobiles in a certain district "and not elsewhere," and that the defendant would not knowingly sell to any other party in said territory, unless in its opinion the dealer should fail to work the territory to the best advantage. The defendant also reserved the right to sell commercial vehicles, to sell to persons or companies engaged in the auto livery business, and to supply merchants from whom the company purchases material or merchandise with all models for the use of such merchants. Paragraph 3 under the head "It is Mutually Covenanted and Agreed" reads as follows:

"That if during the term of this agreement any current automobile manufactured by the company and sold by the dealer be taken from the territory herein described within sixty (60) days next after the date of actual delivery, into and to be used for a period of 120 days or more in the territory allotted to any other dealer, and provided that the dealer into whose territory any such automobile be taken complains thereof to the company in writing within sixty (60) days from the date that any such automobile comes into his territory to remain for use therein, then in such case the difference between the list and the net prices of the automobile in question shall be equally divided with the dealer into whose territory the automobile is taken, and the company will, upon proof satisfactory to it being submitted, make the necessary charge to the account of the selling dealer, and credit the amount of such charge to the other dealer, and the decision of the company shall be final.

"It is further agreed that the company shall be the sole judge of all disputes arising between dealers on account of the sale for the use in each other's territory of automobiles manufactured by the company."

After the suit was filed the contract was changed, and, as changed, was continuously used up to the time of the trial. The words, "and not elsewhere," were changed to "and elsewhere, as herein provided."

In lieu of paragraph 3, above copied, there was inserted the provision copied in the amended petition in paragraph 6, concerning the division of commissions on sales to persons residing out of the described territory. It will be noticed that the provision, above copied from the form of contract complained of in paragraph 4 was to the effect that the dealer or distributor with whom the contract was made was required to pay one-half the difference between the net and list price to a dealer into whose district the automobile may be taken within 60 days after its sale and kept for 120 days or more, but contained no provision that the dealer with whom the contract was made would be entitled to similar payments from dealers who sold automobiles which came into his district within 60 days after sale and remained for 120 days or more. The contract drawn after the suit was filed covered both points. Nor did the first contract contain, as did the later one, the recital that the payment to a dealer into whose district the car was taken was as compensation to him for advertising Overland and Willys-Knight automobiles, keeping in hand sufficient stock of repair parts, "giving proper service to the owners thereof in such district," etc.

There can be no doubt that the contract in existence at the time the suit was filed was so formulated as to carry out the admitted policy of the defendant to confine each distributor and dealer to certain territory; the purpose was plainly expressed by saying that the buyer could sell in certain territory, and not elsewhere. The paragraph concerning payment of half the discount by one distributor to another was probably inserted to cover cases in which sales were made in violation of the territorial restriction, but under a mistake of fact rendering it unjust to treat the contract as breached. Whatever the motive may have been, in inserting such provi-

sion, it is evident that it was designed to aid in enforcing the territorial restriction, and not for the purpose of granting, by implication, the right to violate the plainly expressed intention to confine the distributor to the described territory.

The new contract still contained a description of a district, and it must be assumed that the designation of a certain district was not an idle act, especially when inserted after defendant's right to restrict the territory in which resales may be made has been challenged by the state. To say the least, the insertion of such designation indicates a strong desire on the part of defendant that the other party to the contract shall confine its resales to the district, and in the absence of qualifying language would amount to a restriction. But we find that the words, "and elsewhere, as herein provided," follow the designation of territory. The words, "as herein provided," qualify the words, "and elsewhere," and do not relate back to the word, "sell." This becomes evident when the several contracts are examined, and especially the two designated "Exhibits D-1 and D-2." When we look for the other provision thus referred to we find none which assists us in determining where the buyer may resell in addition to his prescribed territory. The provision with respect to division of profits on certain sales does not purport to authorize the distributor or dealer to sell anywhere he may desire. It merely provides that if a car is taken out of the district within 60 days next after its actual delivery to the purchaser and remains in a district other than the one designated in such contract, the seller must pay the other distributor 50 per cent. of the discount. This provision deals with sales made within the district to residents thereof, or nonresidents thereof, who within 60 days after delivery of the car to them in the district take it into another district. By implication it authorizes a sale within the district to a resident of another district, but not a sale outside of the district. It appears that there is no subsequent part of the contract to which the distributor can point as fulfilling the promise to indicate to him the place other than the designated district in which he may sell, either conditionally or unconditionally. However, it appears from the testimony of Graham that the parties to the contract construe the provision above discussed as covering sales to all nonresidents of the district, whether made within the district or in another district, and that the construction thus given the provision is the one which has been observed and enforced by them.

It is contended by the state that the provision in question was designed for the purpose of restricting resales to the designated district. As before stated, the original contract contained a provision on the same point, and, being contained in a contract which specifically prohibited resales outside of the described territory, it is evident that such provision was intended to serve the purpose of protecting each distributor or dealer in his territory, and not for the purpose of granting a privilege, by implication, to ignore the designation of territory. When the new contract was drawn it was deemed proper to enlarge such provision so as to not only prescribe the condition under which the distributor could make certain described sales, but to also contract with him that if another distributor, not a party to the contract, should make similar sales he would be required to pay the first distributor a certain sum. It was also deemed proper to insert words reciting a consideration for the prescribed division of profits, doubtless for the purpose of giving the clause in question the semblance of creating a reasonable provision. The contract was not between the two persons between whom the consideration was supposed to move, but between one of them and defendant, and as the defendant sold its commodities outright, it appears that the defendant undertook to prescribe the terms upon which resales thereof could be made by the buyer in certain instances. In fact, defendant imposed a condition attaching to the resale of the property, and constituted itself the sole arbiter of whether the condition was complied with, in case of dispute. It may be true that defendant permits its buyers to resell for any price they see proper, but if a sale was made under the provision under consideration for less than the list price, it would be impossible to comply with the terms of such provision by dividing equally the difference between the net and list prices. In such an event, doubtless it would be held by defendant that the dealer who sold the car would suffer the loss, and not the other dealer.

While the theory that the prescribed division is fair is ably and plausibly presented by Graham, the fact remains that according to his own testimony the isolated cases in which sales are made out of the designated territory practically balance each other. If so, there is no necessity for any such clause in order to do justice to a buyer, and another argument is presented for indicating that the purpose of the clause is to aid in effectuating a restriction of territory. His opinion that the division of profit provided in the clause was fair does not appear to have any substantial basis in fact. He admits that a dealer is not even required to accept the free service coupons issued in another district which entitle the buyer to 25 hours' work on his automobile. The dealer or distributor is not required to do anything free of charge with respect to the automobiles which within 60 days after their purchase are brought into his district. He cannot know whether such automobiles will stay in his district 120 days or more, and the obligations resting on him,

if there be any, as to Overland automobiles which come into his district more than 60 days after they are sold, and remain permanently, appear to be exactly the same as those with regard to automobiles which are brought into his district within 60 days from the date they are purchased from another dealer. Apparently it is recognized by all dealers that although there is no legal obligation resting upon them, unless it be created by a contract between them and the buyer, it is good business policy to keep and supply parts, and furnish service to all owners of Overland or Willys-Knight automobiles, regardless of when they came into the district or how long they remain therein, upon the theory that a satisfied owner is a good advertisement, while a dissatisfied one may do much harm.

We will now briefly discuss the method adopted by defendant for the sale of its commodities in Texas. The defendant makes a contract with the distributor, the distributor with the dealer, and the dealer with the subdealer. All of the contracts with distributors and dealers are identical, the forms being prepared by defendant. In each, certain territory is designated, and the evidence discloses that the matter of designation of territory is regarded as of the utmost importance; that the elements to be considered in determining whether the party can properly take care of certain territory are carefully weighed. Thus a system embracing the entire state is created by defendant, and in its contracts with its distributors it reserves the right of absolute power in settling the rights of the parties when there is a dispute concerning whether there should be a division of commission or profit. A designation of territory in which resales may be made, if it means anything at all, and in this case it certainly does, means that either by contract or persuasion the buyer is to be limited to such territory in making resales. Graham testified:

"Before this suit was filed against the defendant the contracts then in use between the defendant and its Texas distributors required the distributors absolutely to confine their resales to certain fixed territory. Since the filing of the suit and the reforming of the contracts the provision was inserted authorizing the distributor to sell cars in other places than in the defined territory. However, it is very desirable from the standpoint of the defendant that the distributors confine their resales to their respective territories as described in their contracts; the defendant prefers that they do so. For that reason, among others, it does not pay to allow the discount off the list price when the cars are sold outside of the territory that it does allow when sold in the territory. So far as our own business· is concerned, there has not been any change in the policy with reference to the territory before and since the suit was filed— that is to say, we now undertake to confine our resales to our territory as described in our contract, just as we did prior to the filing of the suit, and we have done this with possibly four or five exceptions."

He also testified that his company had made four or five sales outside of its territory; that its dealers had probably made a dozen, but none of them made a practice of selling outside of the designated territory; that they explained to the company that they did not know that the party lived in that territory, or some other reason, for selling to him; that his company tried to confine the dealer to his own territory; that if a man comes to the company's place of business to buy, it sells to him, because if it did not sell to him somebody might sell him a different make of car, but that if a person writes from outside the district with a view to buying he is referred to the dealer in whose district he resides, and such dealer is notified. He said that they discourage going into other territory to work; that the dealers are told that it was good business for them to confine their operations to their own territory, "but that by the terms of the contract they had a right to go outside of· their territory." He also testified:

"The general policy of the defendant is to require its distributors to confine their resales to the territory described in their contracts, and in turn it is the policy of the distributor to require the subdealer to confine his resales to the territory described in his contract. It is the effort of all of us to live up to those requirements as best we can, for the reason that that is the general policy of the business. It is the policy of the business from the fact that we, as distributors or dealers, can serve best only that territory that is naturally reached from a certain point. * * * If we should go into the Dallas man's territory and sell the same car that he is selling at a price less than the discount off the list price that we get, we would be interfering with his business considerably, and the same would be true if he should come into our territory and do likewise. As to whether that is not one reason why it is profitable to have a territorial division among the distributors, so that we cannot interfere with each other in that way, I will state that that might be a consideration. However, that was not a matter to which I have ever given any thought. The price-cutting proposition has never been a disturbing factor in our business."

The record discloses a condition with respect to the sale of the commodities of defendant which indicates a gigantic combination between it and those who sell its goods, effectually accomplishing the things prohibited by our anti-trust statutes. If an agreement, lived up to, to respect all territorial designations, so as to avoid competition, constitutes sufficient tangible evidence of the existence of such a combination, we believe the combination has been established in this case at least as between the defendant and its Houston distributor. Coming to the contract formulated after the state brought suit, it ap-

pears that it was changed in words, but that there was no change of intention or in the acts of the parties performed in pursuance thereof. As to the provision of the contract concerning a division of profit, we conclude that the allegations in the petition concerning its purpose and effect are conclusively proven by the evidence. It is evident that it was inserted for the very purpose of enforcing the territorial restriction indicated by describing a certain district. In fact, Graham admits the purpose when he states that it is very desirable from defendant's standpoint that the distributors confine their resales to their respective territories, and for that reason, among others, it does not pay to allow the discount off the list price when, the cars are sold outside of the territory that it does when sold within the territory. That provision, considered alone, shows that the defendant interests itself in the matter of the resale of property for which it has been fully paid. The interest thus manifested is for a definite purpose; that of preventing resales outside a certain territory, and thus preventing competition in the sale of its commodities. The provision shows on its face that a condition is attached to the sale of property by its owner, which tends to restrict him in his business and to prevent free competition by him. When considered with reference to the purpose it was intended to accomplish and what was actually accomplished, it seems that it was potent enough to take the place of an absolute prohibition of sales outside of the described district.

[1] We conclude that the state has established the existence of a combination of acts which not only tend to create, but actually create and carry out, restrictions in the free pursuit of a business permitted by the laws of this state; also to prevent or lessen competition in the sale of commodities. There are probably other provisions of article 7796 applicable, but we deem it unnecessary to go further along this line.

[2] Appellee invokes the protection of the Interstate Commerce Act, but it appears to be well settled that when property is sold and delivered to a resident of the state, free from any claim of title by the seller, and held for sale by retail in the state, it becomes a part of the "common mass of property of the state," and subject to the laws thereof. We consider the able opinion of Justice Taliaferro, in the case of Watkins Med. Co. v. Johnson, 162 S. W. 394, in which a writ of error was denied, to be a sufficient answer to appellee's contention.

We find the proposition urged that the part of appellee's contract which fixed the resale price of automobile parts violates articles 7796 and 7798. We find no pleading on this point, and therefore do not decide it.

The judgment is reversed and judgment rendered granting the appellant an injunction restraining appellee, as prayed for in appellant's petition:

From further observing, respecting, maintaining or doing any act in furtherance of the combination or agreement made and entered into between it and the said the Overland-Houston Company as herein complained of.

From hereafter forming, making, or entering into any combination or agreement with the said the Overland-Houston Company whereby the right of said company to sell automobiles and automobile accessories and supplies in the state of Texas shall be in any manner limited or restricted.

From hereafter forming, making, or entering into any combination and agreement with any other persons, firm, corporation, or association of persons whereby the right of such person, firm, corporation, or association of persons to sell automobiles or automobile accessories and supplies in the state of Texas shall be in any manner limited or restricted.

Reversed and rendered.

### On Motion for Rehearing.

Appellee contends that we erred in holding that appellant is entitled to an injunction "in terms set out in the opinion of the court." It fails to specify, however, wherein the terms are believed to be unwarranted by pleadings or evidence. The terms were copied in the opinion, so that full opportunity would be presented, without procuring a copy of the judgment, to make such objections as might be deemed well founded. If any provision of the judgment is deemed too onerous, it should be pointed out, in order that we may correct the judgment, if it is in fact erroneous in that respect. In the absence of such a specification of error, we can hardly be expected to again go over the record for the purpose of verifying the correctness of the terms of the judgment rendered.

The contention is made that the "contracts declared upon and offered in evidence constitute an interstate transaction to which the Texas anti-trust laws do not apply." If the contracts did not undertake to fasten restrictions upon the resale of the property by the buyers, the contention would doubtless be well founded. While the terminology of the contracts smacks of agency, and the contracts and evidence disclose that appellee seeks to restrict the distributors as if they were merely agents, the fact is undisputed that the automobiles are sold outright by appellee to them. The contracts and appellee's policy, so successfully pursued, impose restrictions upon the resale of property in this state delivered to the distributors and paid for by them, and in which appellee has no further interest whatever; its only connection being that it had formerly owned such property. That the transactions between such distributors and their customers are not interstate

transactions is fully sustained by the case of Watkins Med. Co. v. Johnson, cited in our original opinion and the cases therein discussed, and also by the opinion in the case of Banker Bros. Co. v. Penn., 222 U. S. 210, 32 Sup. Ct. 38, 56 L. Ed. 169. The restrictions objected to by the state are those imposed by appellee upon such transactions. If appellee wishes to avoid being charged with a violation of our anti-trust laws it can accomplish it very easily. It need only do as other sellers do, permit its purchasers who pay for what they buy, to resell to any one, anywhere and at any price. The record in this case discloses that a striking unanimity of sentiment is brought about among all persons handling appellees' commodities, so that all sales are made at the price designated by appellee as the list price, and competition is stifled. Above all of these persons and corporations sits appellee, the arbiter to whose decision all must bow when it passes on the issue whether one of them has committed a trespass upon the rights given the other by appellee. Of course appellee does not go to the trouble of making and enforcing regulations and restrictions concerning the sale of property for which it has been paid, without having a purpose in view. That purpose doubtless is to benefit its business, and to accomplish it the policy is inaugurated that each dealer shall operate in a certain territory. Thus competition is prevented, and, according to this record, as effectually as if the selling price had been prescribed by appellee. There can be no doubt that the penalty imposed by appellee for violations of territorial designations tends to prevent such violations. There can be no doubt that the contract as written and construed and enforced has actually created restrictions such as our statutes prohibit.

The motion for rehearing is overruled.