**HENDERSON TIRE & RUBBER CO., Inc., v. ROBERTS et al. (No. 2051.)**

Court of Civil Appeals of Texas. El Paso. Dec. 8, 1927.

Rehearing Denied Jan. 5, 1928.

1. Monopolies ⬅⟾9—Property sold outright to resident of state for resale therein is subject to state anti-trust laws, not interstate commerce laws.

Property sold to resident of state, free from any claim of title by vendor, and held for resale in state, becomes subject to anti-trust laws thereof, and is not governed by interstate commerce laws.

2. Monopolies ⬅⟾23—Action for money due cannot be maintained, nor judgment recovered on contract violating monopoly statute (Rev. St. 1925, art. 7426 et seq.).

Action for moneys due under contract providing that one party shall handle products of another exclusively, in violation of monopoly statute (Rev. St. 1925, art. 7426 et seq.), cannot be maintained, nor judgment recovered on such contract.

3. Monopolies ⬅⟾17(2)—Contract for sale of tires outright, according to contract prohibiting buyer from selling other manufacturer's tires, held unenforceable, under anti-trust statutes.

Contract for sale of tires without reservation of title in accordance with contract restricting buyer from handling tires of any other manufacturer and giving buyer exclusive right to sell such tires in certain part of state *held* unenforceable against buyer, as subject to anti-trust statutes.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Action by the Henderson Tire & Rubber Company, Inc., against L. E. Roberts and others. Judgment for defendants, and plaintiff appeals. Affirmed.

John Davis, of Dallas, for appellant.

Nathaniel Jacks and J. H. Synnott, both of Dallas, for appellees.

PELPHREY, J. This suit was filed in the Fourty-Fourth district court of Dallas county, by appellant against L. E. Roberts, A. J. Roberts, D. C. Roberts, J. A. Watson, L. E. Roberts & Co., and the Weldon Rubber Company to recover the sum of $14,000 alleged to be due upon certain trade acceptance given by L. E. Roberts & Co., and guaranteed by L. E. Roberts, A. J. Roberts, and J. A. Watson, and against L. E. Roberts, A. J. Roberts, J. A. Watson, and D. C. Welling, as acceptors of said trade acceptances. Appellant in its petition referred to and made a part thereof a certain contract and agreement made and entered into by and between appellant and the L. E. Roberts Company, on November 7, 1921, and a guaranty contract on the part of L. E. Roberts, A. J. Roberts, and J. A. Watson attached thereto.

J. A. Watson, D. C. Welling, A. J. Roberts, and L. E. Roberts Company in the first trial amendment pleaded that the contract between the parties was in violation of the Texas statutes against trust and monopolies (Rev. St. 1925, art. 7426 et seq.), and therefore unenforceable, and that the trade acceptances sued on were the outgrowth of such illegal contract, and therefore void. At the conclusion of the testimony the court instructed the jury to return a verdict against appellant and in favor of appellees.

### Opinion.

Appellant complains of the court's action in so instructing a verdict and contends that the amount sued for as evidenced by the trade acceptances was not affected by the agreement subsequently made between the parties.

In order that a better understanding of the questions before us may be had, we will here quote those parts of the agreement of November 7, 1921, which we consider material to the issue.

"Agreement, made this 7th day of November, 1921, at the city of Buffalo, in the state of New York, between the Henderson Tire & Rubber Company, Inc., a corporation of the state of New York, hereinafter called the consignor, and L. E. Roberts Company, a corporation of the state of Texas, with a place of business at the city of Dallas, in said state, hereinafter called the consignee:

"Whereas, the consignor is engaged in the manufacture of "Eclipse" automobile tires, with its plant at the city of Columbus, in the state of Ohio, and desires to consign such "Eclipse" tires, both cord and fabric, to the consignee for sale for the account of the consignor, as hereinafter provided, and desires to give the said consignee, under the terms of such consignment, exclusive territory as hereinafter provided:

"Now therefore, in consideration of the sum of one dollar in hand paid by the consignor to the consignee and in consideration of the mutual agreements herein contained, this agreement witnesseth:

"(1) Consignor does hereby grant to consignee the exclusive right to sell during the term of this contract "Eclipse" cord and fabric tires

---

within the following described territory: All that part of the state of Texas north of the city of Austin, east of the state line, and west to the one hundred and two parallel and north to the state line. The said consignee agrees to sell said "Eclipse" tires exclusively in said territory and that during the continuance of this contract said consignee shall not carry in stock, advertise or sell tires of any other manufacture.

"(2) The exclusive territory and selling privilege herein granted to the consignee shall be operative for one year from the date hereof and shall be extended for an additional year if the consignee shall during the first year hereunder sell and dispose of $300,000.00 worth of the tires of the consignor; shall be likewise renewable for a further year if in said second year the consignee shall dispose of $350,000.00 worth of said tires, and thereafter, from year to year, if the consignee shall dispose each year of $400,-000.00 worth of said tires; and, in consideration of said exclusive privilege, the consignee agrees to carry in stock, advertise and sell, during the term of this contract, no other tires than those made by the consignor.

"(3) Pending the negotiation and execution of this contract and under date of October 24, 1921, the consignor has sold to the consignee various tires as follows, and at prices set opposite each size and style: [Here follows list of sizes, styles and prices of a quantity of tires amounting to $14,909.88], for which consignor will receive in payment thereof the trade acceptances of the consignee, which trade acceptances shall be guaranteed by individual indorsers of the following: J. A. Watson, L. E. Roberts and A. J. Roberts, payable one-half of the total amount in thirty days and one-half in sixty days from date of shipment of car containing said tires from Columbus, Ohio. The amount of such trade acceptances so given is hereby agreed shall become part of the $40,000.-00 stipulated hereinafter as the maximum credit to be allowed the consignee hereunder.

"(4) The consignor agrees to ship on consignment to the consignee such "Eclipse" cord and fabric tires as specified by consignee which quantity, however, shall at the consigned price thereof, together with other obligations of consignee to consignor, at no time exceed the maximum amount of $40,000.00. The consignee agrees to pay the transportation charges on all shipments and take said consignment shipments in stock for sale as a factor and for the account of consignor and to sell the same at not less than the following prices, which include the excise tax and shall bear no guaranty of the consignor: [Then follows list of sizes, style and prices.] The consignee agrees to sell said tires as factor as hereinafter provided, and to keep accurate account of, and turn over to consignor, the proceeds of such sales as hereinafter provided.

"(5) The consignee shall mail to the consignor on Monday of each week a daily sale schedule showing the serial numbers and sizes of all tires sold during the preceding week and on the last day of each month shall remit to the consignor, from the proceeds of the cash sales during the month, the amount of the consigned invoice price thereof; or, at the option of the consignee, said remittance may be made in the form of sixty-day trade acceptances bearing interest at 7 per cent., duly accepted by the consignee and indorsed by each of the officers of said company individually; such indorsement to include J. A.

Watson, L. E. Roberts and A. J. Roberts, whether or not they remain officers of the L. E. Roberts Company throughout the life of this contract; and should any of said parties wish to sever their connections with the L. E. Roberts Company during the term of this contract, it is expressly agreed and understood that they cannot be relieved of their individual liabilities hereunder, except by providing other guarantors in their respective places which are acceptable to the consignor. The consignee may sell said consigned stock to dealers, and shall report such sales weekly, and on the 1st and 15th of each month shall make up a bimonthly report of such sales and account thereof by trade acceptances payable to the consignor in sixty days, with 7 per cent. interest, each indorsed by the officers of said company individually, and to which shall be attached as collateral the accounts receivable represented by such credit sales which shall be the property of the consignor, but shall be collected by the consignee and deposited in a special bank account which shall be opened under the name 'L. E. Roberts & Co., Special,' and shall be applied against the trade acceptances given on account hereof as herein provided. Upon the payment and deposit into said special account of the full sales price by the consignee of tires sold upon credit, the consignee shall remit to the consignor the part thereof constituting the consignment price of such tires, which shall thereupon be credited by the consignor upon the outstanding trade acceptances of the consignee. It is expressly understood and agreed that all trade acceptances so given hereunder shall represent moneys actually due and the property of the consignor hereunder, and the execution thereof by the consignee shall be conclusive evidence of the amount of moneys due the consignor from the sales theretofore reported as the basis of such acceptances, and the said consignee hereby waives all claims of any allowances and set-offs to such acceptances delivered hereunder.

"(6) The consignor agrees that, upon receipt of the reports herein provided for, it will make shipments for the replenishment of the stock of the consignee so as to bring and maintain the same as nearly as practically possible to the maximum quantity hereinabove provided for, but the consignment price of said stock, together with the trade acceptances outstanding at any time, shall not exceed the sum of forty thousand dollars ($40,000.00), and, if the stock of the consignee shall need replenishing after said limit shall have been reached, the consignee agrees to anticipate and pay off trade acceptances to an amount necessary to enable them to take in said stock, or pay cash for additional merchandise to maintain the consignment stock within the limit herein provided.

"(7) All shipments made hereunder shall be at prices f. o. b. Columbus, and the consignee to take in said shipments and pay transportation charges thereon, and, in the event of cancellation of this contract, to return said consigned goods to the consignor or as may be directed by said consignor and to prepay all transportation and other expenses in connection therewith. * * *

"(9) The consignee agrees that the title to all tires furnished hereunder to the consignee shall remain in the consignor until the sale thereof shall have been effected by the consignee, and until such sale the consignee agrees to keep the said tires insured in an amount at

least equal to the consigned price thereof, for the benefit and in the name of the consignor, and to deliver such policies and renewals thereof to such consignor.

"(10) The consignor agrees to maintain a traveling auditor, or stock inspector, who shall at intervals visit the store of the consignee, and it is agreed that said auditor, or inspector, shall have free access to all of the books, special bank accounts, tire records and stocks of the consignee, and shall be given full and unlimited facilities by the consignee for checking up all sales made of the tires consigned hereunder, and shall audit such sales to the close of business on Saturday prior to the date of such visit.

"(11) This contract shall immediately terminate and expire should any trade acceptance given by the consignee for goods heretofore purchased, or in the settlements provided hereunder, be dishonored."

Attached to this contract is an agreement signed by L. E. Roberts, A. J. Roberts, and J. A. Watson guaranteeing a performance of the contract on the part of the L. E. Roberts Company.

It is not necessary for us to pass upon the question as to whether or not the consignment contract above quoted is in violation of our statutes against trusts and monopolies, or whether the agreement was entered into for the purpose of covering up an otherwise illegal transaction.

The consignment contract recites that appellant, pending the negotiation and execution of the contract, had sold to the L. E. Roberts Company certain tires, and there is no dispute but that the amount now being claimed by appellant is part of the purchase price of those tires. George C. Riley, secretary of appellant and the attorney who drew the consignment contract, testified as follows, relative to the sale of the tires:

"This car of tires upon which we sue at the present time was sold under the terms and provisions of this contract. It was an outright sale which, as the contract says, was to be on terms of credit of 60 and 90 days, to be paid for by the commercial paper, known as trade acceptances. It did not grow out of the contract, but it furnished a nucleus about which the consignment contract was to be continued; it furnished the start for the purchaser which was to be later carried on by a consignment of goods belonging to the manufacturer, and to be held and sold by the Roberts Company. * * * There is no doubt but what that outright sale was a part and parcel of this contract."

[1] When property is sold to a resident of Texas free from any claim of title by the vendor, and is held for resale in the state, it becomes subject to the anti-trust laws of the state and is not governed by the laws as to interstate commerce. State v. Willys-Overland (Tex. Civ. App.) 211 S. W. 609; State v. Racine Sattley Co., 63 Tex. Civ. App. 663, 134 S. W. 400.

The provisions of the contract of November 7, 1921, if applied to an outright sale to the L. E. Roberts Company, would unquestionably be in violation of our anti-trust statutes, and therefore void and unenforceable (Texas & Pac. Coal Co. v. Lawson, 89 Tex. 394, 32 S. W. 871, 34 S. W. 919; Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S. W. 30, 750, 35 L. R. A. 241), and it appears from the uncontradicted evidence that such was true in the present case.

[2] If a contract is in violation of the monopoly statute and provides that one party shall handle the products of another exclusively, an action for moneys due thereunder cannot be maintained and such contract cannot become the foundation for any judgment. Carroll v. Evansville Brewing Ass'n (Tex. Civ. App.) 179 S. W. 1099.

[3] In the case at bar we find that a sale of tires was made to the L. E. Roberts Company with no reservation of title in the seller and that such sale was governed by the provisions in the contract of November 7, 1921, restricting the L. E. Roberts Company from handling any other tires than those of appellant, and giving to the L. E. Roberts Company the exclusive right to sell said tires in a certain described portion of the state of Texas. We think this presents a case which is subject to the anti-trust provisions of our statutes, and therefore unenforceable.

The trial court committed no error in instructing the jury as it did, and its judgment is affirmed.

Affirmed.