## HENDERSON TIRE & RUBBER CO., Inc., v. ROBERTS et al. (No. 1142—5093.)

Commission of Appeals of Texas, Section A. Jan. 9, 1929.

John Davis, of Dallas, for plaintiff in error. Nathaniel Jacks and J. H. Synnott, both of Dallas, for defendants in error.

CRITZ, J. This suit was originally instituted in the district court of Dallas county by Henderson Tire & Rubber Company, a foreign corporation, engaged in the manufacture and sale of automobile tires and tubes, against L. E. Roberts & Co., a trust estate, and undoubtedly a partnership, which was engaged in the business of buying and selling automobile tires and tubes. Henderson Tire & Rubber Company also sued L. E. Roberts, A. J. Roberts, J. A. Watson, and D. C. Walling, individually, and Weldon Rubber Company, alleging said L. E. Roberts & Co. to be a partnership, and also sued these individuals as guarantors of a certain contract, and acceptors of certain trade acceptances. The suit as brought is based on the certain trade acceptances and a certain written guaranty, which was a part of a certain contract of date November 7, 1921. The defendants in the trial court answered and, among other things, pleaded that Henderson Tire & Rubber Company could not recover on its alleged course of action because the same violated articles 7426, 7427, 7428, 7429, and 7437, Revised Civil Statutes of Texas 1925, known as the "Anti-Trust Statutes of Texas." At the close of the testimony the trial court directed a verdict for defendants in the trial court. This verdict was returned by the jury and judgment entered accordingly. The case was duly appealed to the Court of Civil Appeals for the Eighth District, at Dallas, which court affirmed the judgment of the trial court. 1 S.W.(2d) 510. The case is now before this court on writ of error granted on

application of Henderson Tire & Rubber Company. Such further statement of the case as is necessary will appear in the course of this opinion.

We hereafter refer to Henderson Tire & Rubber Company, plaintiff in error, as plaintiff, and to the other parties as defendants.

By its first assignment of error, plaintiff contends in effect that since the contract in question is a consignment contract and not a sales contract, it is entitled to recover the price of the tires in question. In other words, plaintiff contends that the contract, being a pure consignment contract, is valid, legal, and enforceable, because it concerns interstate commerce, and therefore does not come under the provisions of the Texas Anti-Trust Act; and, further, plaintiff contends that the tires sued on herein were sold on October 24, 1924, prior to the making of the contract of November 7, 1921, and were not sold under or affected by the contract of November 7, 1921.

We agree with the contention of plaintiff that, so far as interstate shipments are concerned, "it is well settled that obligations arising out of agency contracts between consignors and consignees, giving the consignee exclusive right of sale within a designated territory, and the consignee agreeing to carry no stock, and not to advertise, and not to sell the goods of any other manufacturer, are enforceable under the laws of this State." Stein Double Cushion Tire Co. v. Fulton et al. (Tex. Civ. App.) 159 S. W. 1013 (writ of error refused); Falls Rubber Co. v. La Fon et al. (Tex. Com. App.) 256 S. W. 577; Milburn Manufacturing Co. v. Peak, 89 Tex. 209, 34 S. W. 102.

The effect of the opinion of the Court of Civil Appeals in the case at bar is to hold that the provisions of the contract of November 7, 1921, apply, as an outright sale, and not as a consignment, of the tires, the consideration for which is sued on herein, and such holding is certainly amply and conclusively shown by the uncontradicted pleadings and evidence of the plaintiff itself. The effect of the opinion of the Court of Civil Appeals is further to hold that the provisions of said contract of November 7, 1921, as applied to an outright sale, is in violation of the laws of this state against monopolies. We think the Court of Civil Appeals was correct in this holding.

■■ The salient features of the contract of date November 7, 1921, are set out in the opinion of the Court of Civil Appeals and will not be repeated here, but we call attention to the fact that said contract grants to L. E. Roberts & Co. the exclusive right to sell, during the term of the contract, Eclipse cord and fabric tires in certain defined and restricted territory in this state, and in consideration of the granting of the exclusive territory by the plaintiff, Roberts Company agreed to sell said Eclipse tires exclusively in said defined and restricted territory during the continuance of the contract, and said Roberts Company further agreed during the continuance of said contract not to sell, carry in stock, or advertise tires of any other manufacturer. As applied to an outright sale, such an agreement is a trust, and a conspiracy in restraint of trade, under the laws of this state. Rev. Civ. Stat. Texas, arts. 7426 and 7428; American Brewing Ass'n v. Woods (Tex. Com. App.) 215 S. W. 448; Fred Miller Brewing Co. v. Coonrod (Tex. Civ. App.) 230 S. W. 1099 (writ refused); Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241; Columbia Carriage Co. v. Hatch, 19 Tex. Civ. App. 120, 47 S. W. 288 (writ refused). Any contract or agreement in violation of the provisions of the Anti-Trust statutes of this state are absolutely void and unenforceable in the courts of this state. Rev. Civ. Stat. Texas 1925, art. 7437.

■ The contract of date November 7, 1921, might be legal as a pure agency contract if carried out as such, because, in such event, it would solely have affected interstate commerce, but if the intent, and purpose of the contract, as evidenced by the record and testimony, shows that it was to effect a direct outright sale to defendants, wherein the property sold, and now sued upon, became a part of the common mass of property in this state, and subject to its laws, the fact that the contract might have been legal on its face, as an agency contract, does not relieve it of its illegality as actually operated under and carried out. W. T. Rawleigh Co. v. Land (Tex. Civ. App.) 261 S. W. 186; Id., 115 Tex. 319, 279 S. W. 810. In other words, if the tires in question were sold outright to defendants, and after they arrived in Texas, being the property of defendants, were subject to the illegal provisions of said contract, as a condition precedent to such sale, then the transaction taken as a whole was rendered illegal and unenforceable.

Now let us examine the record and see if any other reasonable conclusion can be drawn than that reached by the Court of Civil Appeals. The pleadings of the plaintiff in the trial court aver that on November 22, 1921, plaintiff shipped the appellees the goods, wares, and merchandise for which the trade acceptances sued on were given; that said contract was entered into of date of November 7, 1921, and was entered into in further reference to the goods, wares, and merchandise sued upon; and further alleges said contract contained, among other things, the following obligations, and then sets out the absolute sale of the tires under the conditions and terms of the contract, and alleges that plaintiff received in payment thereof trade acceptances which trade acceptances are alleged to be guaranteed by individual indorsements of

the following (naming some of the defendants), payable one-half of the total amount in 30 days and one-half in 60 days from date of shipment of car. The contract, of November 7th, is pleaded in full and fully sets out that the amount of such trade acceptances on such outright sale was to become part of the $40,000 stipulated in the contract as the maximum credit to be allowed the consignee under the contract. The outright sale, and the consignment contract, are by such allegations linked inseparably and show the appellant to be using the contract of November 7th as a direct sales contract. The appellant further goes on to plead the guaranty which was a part of the contract; and further pleads that a rider was attached to the contract changing the terms of the sale and the terms of credit to 60 and 90 days in place of 30 and 60 days. Said petition then declares upon the contract, and attaches a copy to the petition and makes it a part of same. Said petition alleges that the defendants are liable by reason of the trade acceptances, and by reason of their written guaranty, which was a part of the said contract of November 7th, and which, but for the contract, was not binding. Said petition also pleads the provisions of said contract to the effect that if the trade acceptances were not honored when due, the contract should immediately terminate and expire, and that the trade acceptances have not been paid, and that by reason of the provisions of said contract all rights and privileges under said contract terminated at that time, January 23, 1922 (the date the trade acceptances were dishonored). Appellant further alleged in said petition that the appellant had complied fully and completely with all the terms and provisions of said contract and had not breached the same or any of its provisions.

The statement of facts contains the following agreement: "It is agreed by and between counsel for all parties in this case that L. E. Roberts Company, received goods as shown by invoice of date November 22nd, 1921 in the sum total of $14,575.63, and the difference between $14,909.88 and $14,575.63 is the amount or difference between prices at date goods were ordered on November 7, 1921, and date they were shipped out on November 22, 1921, $14,575.63 was the sum total of the first acceptances and those trade acceptances were to be due in January and February and some payments were made, and the second series of trade acceptances were renewed as per what is introduced in evidence here and the difference in what plaintiff sued for and the $14,575.63, is the amount paid."

George C. Riley testified, in substance: That he was an attorney at law, and secretary and counsel for plaintiff, and had been such secretary since the organization of plaintiff company in March, 1918; that the contract in question was prepared by him at Buffalo, N. Y., on November 7, 1921, and sent to Mr. Henderson, president of plaintiff company, and was then forwarded to Texas for execution by the Roberts Company, and the guarantors, first; that it then came back and was signed by Mr. Henderson, president of plaintiff; that the deal was corrected by a rider of date November 11, 1921, which changed the terms of the sale on November 11, 1921, from 30 and 60 day trade acceptances to 60 and 90 day trade acceptances, a longer term of credit on the tires sold outright.

This witness then further testifies:

"After we made this exclusive contract with L. E. Roberts & Company, we ceased to sell Eclipse tires to any other concern in the territory designated in that contract, so far as my knowledge as defined in my answers. The purpose of the contract was to give L. E. Roberts & Company the exclusive right to the territory designated in that contract for that particular tire, that is our purpose was to give him the exclusive right to buy that tire from us in this territory and nobody else. I do not recall whether the contract provided that Roberts was not to buy from, sell, advertise or dispose of any other tire or not. If it is in the contract, I had a purpose in putting it in the contract. It was our intent not to sell Eclipse tires to any other person in that territory designated in the contract when we signed that contract until it was broken. I do not recall just what is in the contract, and it may have a clause which I frequently use that they may dispose of the stock that they then have on hand of other tires, but after the date of this contract that they would not purchase or advertise any other tires after that time. The idea as I understand it was that they were to buy this Eclipse tire from us and we were to furnish it to nobody else in the territory during the term of this contract. It was mutual, they were taking our brand and we were selling them that brand and nobody else in this territory.

"This car of tires on which we sue at the present time was sold under the terms and provisions of this contract. It was an outright sale which, as the contract says, was to be on terms of credit of 60 and 90 days to be paid for by the commercial paper, known as Trade Acceptances. It did not grow out of the contract but it furnished a nucleus about which the consignment contract was to be continued; it furnished the start for the purchaser which was to be later carried on by a consignment of goods belonging to the manufacturer, and to be held and sold by the Roberts Company. That stock of tires was sold and delivered, but it was never paid for. The terms of the contract did not make an executed sale; it stated that the method of payment would be by trade acceptances which

were to be paid at maturity. Upon our acceptance of the trade acceptances executed by L. E. Roberts and the guarantee therefor, that made a complete sale outright so far as the transfer of the title to the goods was concerned. This contract was entered into sometime in the week following the 7th of November and the shipment on the sale outright was made subsequently and the trade acceptances were drawn on the date of each shipment, being the date of the invoice of each shipment and was sent down here for execution and acceptance by the Roberts Company and then matured in due course and as I recall it were renewed some two or three times. There is no doubt but what that outright sale was a part and parcel of this contract. Surely, that is the fact, both speaking as a witness, and, as an officer of the Henderson Tire & Rubber Company. I am Secretary of the Henderson Tire & Rubber Company and I am testifying under oath here in regard to the facts."

C. O. Henderson, president of plaintiff, was sworn as a witness, and testified that one W. E. Lake was his salesman. This witness identified a letter dated November 7, 1921, written by him to said Lake, and the first paragraph of this letter is as follows: "We are enclosing Roberts Contract which positively must not be changed in any manner and must be properly executed before we ship a single tire, and furthermore, they will have to take the first car load as a direct sale on trade acceptance terms as specified in the contract."

From the testimony above specified and numerous other facts and circumstances shown in the record, we are of the opinion that the Court of Civil Appeals was correct in holding and finding, as a matter of law, that the tires made the basis of the trade acceptances sued on herein were sold outright to L. E. Roberts Company, under the terms and conditions of the contract of November 7, 1921, and that being a straight sale the title passed to L. E. Roberts Company, and the tires, when they were received in Texas, became a part of the common mass of property in this state, subject to the anti-trust laws of Texas, and the rights of said Roberts Company as to the sale of said tires so owned by them being limited by the conditions and provisions of the contract as to exclusive territory etc., constituted said transaction a conspiracy in restraint of trade as regards said tires.

Plaintiff further contends that since the trade acceptances made the basis of this suit, which were entered into in March and April, 1922, when defendants paid part of the original trade acceptances and executed and delivered to plaintiff the new trade acceptances sued on herein, were new contracts executed without the aid of courts, by the voluntary acts of the parties the renewal trade acceptances are enforceable under the laws of this state, citing Fred Miller Brewing Co. v. Coonrod (Tex. Civ. App.) 230 S. W. 1099, and Hall v. Edwards (Tex. Com. App.) 222 S. W. 167.

We are of the opinion that the issues of this case as regards said renewal contracts are not ruled by the authorities last above cited, but that they are similar to and ruled by the holdings in the cases of W. T. Rawleigh Co. v. Land (Tex. Civ. App.) 261 S. W. 186; W. T. Rawleigh Co. v. Land, 115 Tex. 319, 279 S. W. 810; and Columbia Carriage Co. v. Hatch, 19 Tex. Civ. App. 120, 47 S. W. 288, (writ refused).

In the Rawleigh Company Case the Court of Civil Appeals says in its opinion on motion for rehearing:

"It is not required, in order to render the principal contract void, that the unlawful 'combination' be disclosed by the terms of that contract. It is sufficient if the contract is a part of a covert scheme to conduct a business in an unlawful manner. If Land's promise to pay the purchase price of the goods was based alone upon the consideration found in the value of the goods, then his promise made after the unlawful enterprise had ended, and the scheme abandoned, might create an enforceable contract because of the moral obligation resting upon Land to pay for the benefits he had received. But if, as we now conclude is the true situation, his promise was based not only upon the consideration furnished by the value of the goods, but upon the further consideration that the appellant would not sell similar goods to a competitor in that territory, the new promise still contains a part of the original taint. If, at the time Land received the goods, he had given his promissory notes for the purchase price, and after the dealings had ended had renewed the debt by giving new notes based upon the old consideration, the new notes would be only an extension of a debt unenforceable because based upon an unlawful consideration. The character of this transaction is not legally different because of the form in which it is presented in the record.

"We have concluded that the facts bring this case clearly within the rule announced in the following cases: Wegner Bros. v. Biering & Co., 65 Tex. 506; Reed v. Brewer, 90 Tex. 144, 37 S. W. 418; Columbia Carriage Co. v. Hatch, 19 Tex. Civ. App. 120, 47 S. W. 288."

The Supreme Court, in passing on the opinion of Judge Nickels of the Commission, 115 Tex. 331, 279 S. W. 814, in effect, expressly approves and concurs in the holding of the Court of Civil Appeals, by the use of the following language by the Supreme Court: "Consideration of the facts convinces us that the written contracts between the parties, interpreted in the light of the actual practices between them, were prepared and signed for the purpose of violating the Anti-Trust Laws

of this state within the state, and that. the obligations arose in consummating this purpose. This leads to our concurrence in the opinion of the Court of Civil Appeals on motion for rehearing, and in the recommendation that the judgment of the Court of Civil Appeals be affirmed, and it is so ordered."

It therefore follows from what we have said that we hold, as a matter of law, that the renewal promises, or trade acceptances, were based not only upon the consideration furnished by the value of the tires in question, but upon the further consideration of the illegal provisions of the contract of November 7, 1921, and that the new promises or trade acceptances still contain a part of the original taint.

We therefore recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.